James F. Basile (SBN 228965)
james.basile@kirkland.com
Elizabeth L. Deeley (SBN 230798)
elizabeth.deeley@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California  94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Susan Davies (Pro Hac Vice Application Forthcoming)
susan.davies@kirkland.com
Ian R. Conner (Pro Hac Vice Application Forthcoming)
ian.conner@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

Attorneys for Defendant
FACEBOOK, INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAMBREEL HOLDINGS LLC; YONTOO LLC; and THEME YOUR WORLD LLC,<br><br>          Plaintiffs,<br><br>     vs.<br><br>FACEBOOK, INC.,<br><br>          Defendant. | CASE NO. 12-CV-00668-CAB-KSC<br><br>**DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY**<br><br><br>Judge:          Hon. Cathy Ann Bencivengo<br>Hearing Date:<br>Hearing Time:<br>Dept.:           Courtroom 2 |

# TABLE OF CONTENTS

**Page**

**FACTUAL AND PROCEDURAL BACKGROUND** ................................................................4

**ARGUMENT**........................................................................................................................6

    I.    A RULE 16 INITIAL SCHEDULING CONFERENCE WOULD PROMOTE AN ORDERLY AND TIMELY RESOLUTION OF THIS CASE. ........................6

    II.    EXPEDITED DISCOVERY IS PARTICULARLY APPROPRIATE FOR A FULL AND FAIR RESOLUTION OF SAMBREEL'S PRELIMINARY INJUNCTION MOTION. .........................................................................................7

        A.    Sambreel Cannot Unilaterally Avoid Discovery With Cries Of Irreparable Harm And Overly Burdensome Requests. ................................9

        B.    Facebook's Proposed Order Provides A Reasonable Schedule For Expedited Discovery In Advance of This Preliminary Injunction Hearing. ......................................................................................................10

    III.    AN EXPEDITED MOTION TO DISMISS SCHEDULE IS NECESSARY TO RESOLVE THRESHOLD LEGAL ISSUES IN ADVANCE OF A PRELIMINARY INJUNCTION HEARING. ........................................................11

**CONCLUSION** ..................................................................................................................14

**Cases**

Apple Inc. v. Samsung Elec. Co., Ltd.,
  No. 11-CV-01846-LHK, 2011 WL 1938154, *1 (N.D. Cal. May 18, 2011) .............................. 8, 9

Bayer Corp. v. Roche Molecular Sys., Inc.,
  72 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999) ............................................................................... 11

Berlin Media Art e.k. v. Does 1 through 146,
  No. CIV. S-11-2039 KJM, 2011 WL 4056167 (E.D. Cal. Sept. 12, 2011) (citations omitted) ........ 8

Cascade Health Solutions v. PeaceHealth,
  515 F.3d 883, 901-02 (9th Cir. 2008) ............................................................................................. 13

Douglas v. Dry Creek Rancheria Band of Pomo Indians,
  No. CV-08-159-S-EJL, 2009 WL 224538, at *1 (D. Idaho Jan. 29, 2009) ................................ 12

Fairdale Farms, Inc. v. Yankee Milk, Inc., 715 F.2d 30, 34 (2d Cir. 1983) ..................................... 12

Korea Kumho Petrochemical v. Flexsys America LP,
  No. 07-1057 MJJ, 2008 WL 686834, at *3 (N.D. Cal. March 11, 2008) ..................................... 13

Maxwell Technologies, Inc. v. Nesscap, Inc.,
  508 F. Supp. 2d 837, 839-840 (S.D. Cal. 2007) ............................................................................ 12

Mediterranean Enterprises, Inc. v. Ssangyong Corp.,
  708 F.2d 1458 (9th Cir. 1983) ........................................................................................................ 6

Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.,
  762 F.2d 1374 (9th Cir. 1985) ........................................................................................................ 7

Pacific Coast Breaker, Inc. v. Connecticut Elec., Inc.,
  No. 10-3134 KJM EFB, 2011 WL 2073796, at *2 (E.D. Cal. May 24, 2011) .............................. 11

Rogers-Dial v. Rincon Band of Luiseno Indians,
  No. 10-cv-2656-WQH-POR, 2011 WL 2619232, at *2 (S.D. Cal. July 1, 2011) ......................... 11

Semitool, Inc. v. Tokyo Electron America, Inc.,
  208 F.R.D. 273, 276 (N.D. Cal. 2002) ............................................................................................ 8

Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.,
  No. C-99-2621 MHP, 1999 WL 33295030, at *1 (N.D. Cal. Nov. 12, 1999) .............................. 12

Two Jinn, Inc. v. Gov't Payment Serv., Inc.,
  No. 09-CV-2701 JLS BLM, 2010 WL 1329077 (S.D. Cal. Apr. 1, 2010) ..................................... 11

Verizon Commc'n Inc. v. Law Offices of Curtis V. Trinko, LLP,
  540 U.S. 398, 407–08 (2004) ........................................................................................................ 12

**Statutes**

CivLR 26.1(e) ...................................................................................................................................... 8

Plaintiffs Sambreel Holdings LLC, Yontoo LLC, and Theme Your World LLC (collectively, "Sambreel") have attacked Facebook, Inc.'s ability to control its own product and protect its users' experience within its product. Sambreel is the owner and designer of "PageRage," software that modifies Facebook users' Facebook experience, violates Facebook's terms, injects advertising and other content onto Facebook pages (without users' knowledge), poses security threats, impairs Facebook's site performance, embeds Sambreel's own obtrusive display advertising into the Facebook experience while simultaneously displacing or covering Facebook's own unobtrusive advertising and hijacks Facebook communications channels. Facebook users complain loudly and repeatedly about Sambreel's conduct *to Facebook*, many times confusing Sambreel's conduct as seemingly approved or authorized by Facebook or, worse, confusing Sambreel's conduct as Facebook's.[1] Sambreel's conduct is directly damaging Facebook's brand, reputation and business as well as impeding its legitimate right to advertise on its own website. Facebook has told Sambreel that it is free to integrate with Facebook using the Facebook Platform—a powerful set of tools designed to enable third-party developers to build social experiences across the web that is used by millions of developers and website owners. Sambreel has refused, presumably because it does not want to agree to the same terms that apply to the legions of other third-party developers that use the Facebook Platform to enhance Facebook users' online experience. All the while, Sambreel has not participated in any way in the development, capitalization, maintenance or improvement of Facebook's service—Sambreel is a classic free rider, profiting off of Facebook's efforts while simultaneously violating Facebook's policies and undermining Facebook's service and brand.

Sambreel launched this lawsuit seeking to use the antitrust laws to obtain an affirmative

---

[1] In its complaint, Sambreel alleges that its product "provides functionality that its users view as beneficial," (Compl. ¶ 45); the evidence, however, will show that many Facebook users unknowingly download Sambreel's products, have no real interest in them, and want to get rid of them when they learn of their presence. Indeed, Sambreel even fooled tech blogger, Mike Holder, who wrote a scathing criticism of *Facebook* for introducing "big" and "gaudy" banner ads, which he criticized as contrary to Facebook's long-held policy against banner ads which negatively affect the "user experience." *See* Basile Decl. ¶10 Ex. F. Holder attributed the ads to Facebook and concluded: "I joined Facebook 5 years ago to get away from MySpace's gaudy banner ads and layouts. Why would I want them now on Facebook? Right now MySpace is a breath away from folding into oblivion because of moves like what Facebook pulled today. Why would you want to do the same things that drove people from your former competition to drive them to a new hot player on the social networking scene – Google+?" The mistaken attribution of PageRage's ads to Facebook was later corrected by fellow tech blogger Whitson Gordon, who acknowledged: "What we originally thought to be an upcoming Facebook update has turned out to be a 3rd-party plugin that hijacks your Facebook" that "adds new big, obnoxious ads next to and inside their Facebook feeds." *See* Basile Decl. ¶11 Ex. G. He goes on to note that "this is a plugin you'll want to remove from your computer[.]" *Id.*

Mem. of Points and Authorities in                                    Case No: 12-CV-00668-CAB-KSC
Support of *Ex Parte* Application

1  injunction that would force Facebook to allow Sambreel to continue to free-ride on Facebook's
2  success.  Sambreel waited *eight months* after it allegedly learned of Facebook's steps to protect its
3  users to file a motion for a preliminary injunction.  Rather than seeking immediate action, Sambreel
4  apparently took its time to assemble a "case" against Facebook.  Now Sambreel complains of
5  "irreparable harm" and the need for immediate and extraordinary Court intervention.  Sambreel
6  seeks a preliminary injunction hearing in less than a month, refuses Facebook's proposals for any
7  extension of that date, refuses to produce any documents, and refuses to allow Facebook to depose
8  any of Sambreel's declarants (all of whom are Sambreel employees) before that hearing.  Indeed,
9  Sambreel refuses to agree to *any* discovery in advance of the preliminary injunction hearing.
10 Accordingly, Facebook petitions the Court to set a reasonable preliminary injunction schedule,
   allowing for expedited discovery and briefing of a motion to dismiss.
11
       Specifically, in the interests of efficiency and judicial economy, Facebook respectfully
12 requests:  a) an order setting a Rule 16 initial case scheduling conference at the Court's earliest
13 convenience, and b) an order setting an expedited motion to dismiss briefing schedule and an
14 expedited discovery and briefing schedule for Sambreel's preliminary injunction motion, allowing
15 for document discovery, interrogatories and depositions.  After exhausting efforts to resolve these
16 scheduling and discovery issues consensually, Facebook provided timely advance notice of this
17 application to opposing counsel and counsel agreed that the parties had met their meet and confer
18 obligation.  *See* the Declaration of James F. Basile, submitted concurrently ("Basile Decl.") ¶ 8.
   Facebook's request is warranted for several reasons:
19
       *First*, after developing its affirmative preliminary injunction case before filing its complaint
20 (presumably over an eight-month period), Sambreel has rejected Facebook's repeated attempts to
21 negotiate an expedited discovery and briefing schedule that will allow Facebook to develop its
22 response and take any discovery.  Specifically, Sambreel has refused to alter its preliminary
23 injunction hearing date in any way to allow for expedited discovery or motion to dismiss briefing
24 unless Facebook stipulates to an interim order tracking Sambreel's requested injunctive relief.  *See*
25 Basile Decl. ¶ 4 Ex. A.  No defendant should be required to stipulate to an extraordinary affirmative
26 injunction as a precondition for negotiating a workable litigation schedule consistent with due
27 process.  Furthermore, Sambreel asserts that Facebook is not entitled to *any* discovery or depositions
28 before the preliminary injunction hearing.  This litigation requires, at a minimum, an expedited

1  schedule that allows *both sides* to develop the factual and legal record necessary for a full and fair

2  resolution of Sambreel's preliminary injunction motion.  Good cause exists for early and expedited

3  discovery where, like here, a preliminary injunction is pending, the scope of proposed discovery is

4  reasonably tailored to the issues and defenses arising from Sambreel's preliminary injunction

5  motion, and the potential burden of discovery is equally distributed subject to the parties' choices by

6  virtue of a reciprocal discovery plan, offering both sides the opportunity for discovery.

7  *Second*, Sambreel's complaint and preliminary injunction motion are inaccurate in one of

8  their core allegations that Facebook is currently "gating" Sambreel's users—*i.e.*, "requir[ing] its

9  users to uninstall all of Sambreel's products before they were allowed to access

10  www.facebook.com."  (Mem. at 2:8-9; *see also* Compl. ¶ 6.)  Facebook is not—and since December

11  2011 has not been—intentionally gating PageRage users, and Facebook represented as much to

   Sambreel's counsel.[2]  Basile Decl. ¶ 8.  Because Sambreel is raising fundamental issues about

12  Facebook's ability to control its own products and protect its users' experience and because

13  Facebook wants this issue fully and fairly presented to the Court, Facebook went the extra mile and

14  offered to agree in writing to continue not to gate Sambreel's users until an agreed-to preliminary

15  injunction hearing date in an effort to negotiate a realistic discovery and hearing schedule.

16  Consistent with its repeated refusal to engage in any meaningful dialogue about the scope of

17  discovery or any modification of its schedule, Sambreel rejected Facebook's proposal.

18  *Third*, the Court should resolve the glaring *legal* deficiencies and indecipherable vagueness

19  in the complaint through an expedited motion to dismiss before the parties and the Court needlessly

20  expend resources resolving a complex, fact-intensive preliminary injunction motion.[3]  Primary

21  among Sambreel's pleading missteps is its failure to establish standing by not pleading a cognizable

   "antitrust injury."  In addition, consistent with the Supreme Court's rulings in *Twombly* and *Iqbal*,

22  the Court should dismiss—and require repleading of—Sambreel's deficient pleadings, including:  a)

23  Sambreel's attempt to shoehorn its antitrust claims into several different non-cognizable antitrust

24  markets, b) Sambreel's allegations that Facebook violated antitrust laws by taking lawful steps to

25

26  [2] An immaterial number of PageRage users may be unintentionally gated because they were the subject of previous detection due to malware mitigation.

27  [3] Facebook filed this application and supporting memorandum in this Court after the parties' negotiations failed because of the imminent date to file an Opposition to Sambreel's Motion for Preliminary Injunction (April 6 on the current
28  schedule).  However, consistent with the stipulated venue in its terms of service agreement, Facebook shortly will be filing a motion to transfer this dispute to the Northern District of California.

Mem. of Points and Authorities in                    3                    Case No: 12-CV-00668-CAB-KSC
Support of *Ex Parte* Application

protect its intellectual property, and c) Sambreel's claim that Facebook's insistence that Sambreel comply with the same terms as all other third-party developers is an antitrust violation.  Resolving these basic pleading issues now will save the parties and the Court substantial time and cost and should significantly narrow the scope of any later preliminary injunction hearing.

For these reasons and all of the additional reasons below, this Court should grant Facebook's *ex parte* application.

## FACTUAL AND PROCEDURAL BACKGROUND

Facebook is the owner and designer of a social networking website that allows users to connect and share information with their friends and family.  Facebook is free, and generates revenue primarily through its display of third-party advertising on Facebook's website.  Due to superior design, development, and marketing since its start in 2004, Facebook has become the most popular social network on the internet.  Critical to Facebook's success and connection to its users is its commitment to a simple, tasteful, fast and easy-to-use environment, free of the intrusive and overbearing ads and other commercial content that is common on other Internet properties.

Sambreel is the owner and designer of "PageRage."  PageRage is software that modifies the appearance of Facebook web pages by injecting "skins" and other static and dynamic content into the users' Facebook experience.  PageRage creates revenue for Sambreel by selling placement of large, obtrusive and flashing display ads—not authorized by Facebook—on Facebook's web pages to Facebook users.  Sambreel markets and designs PageRage to operate solely in connection with Facebook.  Many users have unintentionally and/or unknowingly installed PageRage and later complained to Facebook about the intrusive advertising Sambreel serves on Facebook, as well as the way in which Sambreel alters the display of the Facebook website.  PageRage's components also violate the Facebook terms of service, alter the appearance of the site, present security threats, impair the speed with which Facebook "loads," harvest user information without their knowledge and hijack Facebook communication channels.  Facebook has repeatedly told Sambreel that it can integrate with users *free of charge*, and even *serve advertising to Facebook users*, by creating its own website and integrating through Facebook's "Platform," which is successfully used by countless third-party developers to import the Facebook experience into their own sites, while adhering to terms designed to respect the privacy and expectations of Facebook's users.  Sambreel has refused.

Sambreel alleges that Facebook began encouraging Sambreel's advertising partners eight months ago, in July 2011, to "deal *either* with Facebook and the entities that operate applications on Facebook *or* with PageRage." Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction ("Mem.") at 2:1-3 (emphasis in original). It also alleges that in December 2011, Facebook began requiring Facebook users to uninstall the PageRage program before accessing Facebook's website. *Id*. at 2:5-8. On March 19, 2012, Sambreel filed its complaint asserting four federal antitrust claims, a claim under California's Unfair Competition Law, and intentional interference with both contract and prospective economic advantage. The same day, Sambreel filed its preliminary injunction motion alleging "irreparable harm" for conduct that allegedly began more than ***eight months ago***. Prelim. Inj. Mot. at 2:1-3. Sambreel filed declarations from five individuals, and more than 20 exhibits in support of its preliminary injunction motion. Sambreel's hearing date for the preliminary injunction is April 25, 2012.

While ultimately lacking merit, Sambreel's complaint and preliminary injunction motion involve complex issues of federal antitrust and intellectual property law, including by way of example:

- Group boycott, tying, and monopolization claims under Sections 1 and 2 of the Sherman Act;

- Whether Sambreel has suffered a cognizable "antitrust injury" that creates standing to assert its antitrust claims;

- Whether Facebook's protection of its rights can even form the basis of an antitrust claim;

- Whether this is a *per se* case under the Sherman Act as Sambreel alleges, or whether Sambreel's "free riding" on Facebook's investment warrants a rule of reason analysis;

- Whether there are any pro-competitive justifications underlying the alleged "boycott;"

- Whether Facebook's insistence that Sambreel adhere to the same terms that apply to other third-party developers can be characterized as monopolization;

- What the relevant antitrust market is; and

- Whether Facebook has market power when Sambreel alleges that Facebook has only 28% of display advertising impressions.

1   Facebook seeks an expedited Rule 16 scheduling conference to set a schedule that will allow the
2   parties and the Court to address these and other issues in this case in an orderly fashion.
3           Before seeking this *ex parte* relief, Facebook took considerable steps to negotiate a
4   consensual and workable briefing and discovery schedule with Sambreel's counsel.  Sambreel
5   informed Facebook that it was not necessary for the Court to decide the motion to dismiss before
6   considering the preliminary injunction motion.  *See* Basile Decl. ¶ 4 Ex. A.  Sambreel also claimed
7   that **no discovery** was needed before the preliminary injunction hearing and refused to adjust the
8   preliminary injunction schedule unless Facebook agreed to an interim injunction that tracked
9   Sambreel's injunction request.  *Id*. ¶ 5 Ex. B.  Facebook tried to encourage negotiation by providing
10  proposed discovery topics to Sambreel.  *Id*. ¶ 6 Ex. C.  Sambreel's counsel responded by flatly
11  refusing Facebook's proposal, refusing to agree to any discovery or depositions, and instead
12  demanding that Facebook agree to Sambreel's proposed interim relief.  *Id*. ¶ 7 Ex. D.  In response,
13  Facebook informed Sambreel's counsel that it was not intentionally gating Facebook users infected
14  with Sambreel's software and would agree not to gate through an agreed-to preliminary injunction
15  hearing date in exchange for a reasonable briefing and discovery schedule.  *Id*. ¶ 8.  This
16  compromise was also rejected.  *Id*.  Sambreel's counsel reiterated Sambreel's position that it was
17  unnecessary for Facebook to receive any discovery or depositions and that Sambreel was unwilling
    to even propose a compromise position on the scope of discovery.  *Id*.

## **ARGUMENT**

**I.   A RULE 16 INITIAL SCHEDULING CONFERENCE WOULD PROMOTE AN ORDERLY AND TIMELY RESOLUTION OF THIS CASE.**

        The Court should hold an expedited Rule 16 initial scheduling conference to set a realistic
briefing and discovery schedule.  The Court "possesses the inherent power to control is own docket
and calendar."  *Mediterranean Enterprises, Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir.
1983).  Use of that discretion is appropriate here where Facebook moved swiftly to meet and confer
with opposing counsel on the issues in this *ex parte* application, and Sambreel has refused to adjust
its proposed preliminary injunction schedule unless Facebook agrees to draconian demands.  *See*
Basile Decl. ¶ 5 Ex. B.  Sambreel's inflexible demands are striking given its own eight-month delay
in bringing this action, its sudden rush to judgment to avoid *now* asserted "irreparable harm," and
Facebook's offer to agree in writing not to gate Sambreel's users through an agreed-to preliminary

1   injunction hearing date.  *See* Prelim. Inj. Mot. at 2; *Oakland Tribune, Inc. v. Chronicle Pub. Co.,*
2   *Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (affirming denial of preliminary injunction on
3   monopolization claim finding that "Plaintiff's long delay before seeking a preliminary injunction
4   implies a lack of urgency and irreparable harm.") (citations omitted); Basile Decl. ¶ 8.

5           The stakes of Sambreel's preliminary injunction motion are high.  Sambreel operates
6   parasitic software that hijacks Facebook users' experience, injecting intrusive advertising content
7   and altering the display of the Facebook website, oftentimes without the users' knowledge (much
8   less consent).  It undermines Facebook's ability to control its own product and service, slows
9   Facebook's page-load times, and exposes users to online security threats.  Sambreel's intrusion is
10  underscored by the repeated complaints Facebook receives about Sambreel's conduct and the
11  unseemly ads it injects onto Facebook, which fail to conform to Facebook's strict requirements on
12  the size and content of advertising on facebook.com, and confuse Facebook users who think that
13  Facebook itself is responsible for the advertising and other injected functionality.  This confusion
14  degrades Facebook's brand and reputation and interferes with Facebook's lawful right to control its own site.

15          Sambreel's business model is simply to free-ride off of Facebook's brand, ingenuity, and
16  innovation.  Worse still, Sambreel is the largest of many infiltrating add-on programs that try to
17  inject ads and malicious content into Facebook.  These parasitic programs threaten Facebook's
18  ability to control the look, feel, and experience of its unique social networking product.  In short,
19  they threaten the very stuff that has made Facebook such a success, and Facebook expends
20  substantial resources policing its site in order to prevent them from undermining users' experience.

21          Given the claims at issue, Facebook has an equally compelling interest in quickly and fully
22  resolving Sambreel's allegations.  For that reason, it seeks this Court's assistance in setting an
23  expedited briefing and discovery schedule that will let Facebook develop the factual record and test
24  Sambreel's legal theories, while still allowing for swift resolution of Sambreel's preliminary injunction motion.

25
**II.  EXPEDITED DISCOVERY IS PARTICULARLY APPROPRIATE FOR A FULL
26      AND FAIR RESOLUTION OF SAMBREEL'S PRELIMINARY INJUNCTION
        MOTION.**
27
28  Facebook seeks expedited discovery to defend itself against Sambreel's preliminary

injunction motion. After spending months developing its affirmative case for a preliminary injunction, Sambreel has tellingly objected to providing any formal discovery that would allow Facebook to test Sambreel's far-reaching allegations (including the depositions of any of its five employee declarants), arguing that discovery is not necessary for either party in advance of the preliminary injunction hearing. *See* Basile Decl. ¶ 5 Ex. B. Having developed its arguments before launching its complaint, Sambreel wants to bar Facebook from refuting those allegations. This Court should not countenance this affront to basic notions of due process.

In contrast, Facebook proposes a ***mutually reciprocal*** discovery schedule that involves a maximum of 15 document requests, 11 interrogatories, 5 party depositions, and limited expert and third-party discovery for each side. Discovery would be reasonably tailored to issues relating to the claims and defenses arising from Sambreel's preliminary injunction motion, and would also allow the Court to resolve Sambreel's preliminary injunction motion with a full and accurate picture of the factual record. Facebook has attached its proposed discovery as Ex. E to the Basile Declaration in support of this application.[4]

Courts grant expedited discovery in advance of a preliminary injunction motion when a party makes a showing of good cause. See, e.g., Semitool, Inc. v. Tokyo Electron America, Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party," granting expedited discovery for plaintiffs); Apple Inc. v. Samsung Elec. Co., Ltd., No. 11-CV-01846-LHK, 2011 WL 1938154, *1 (N.D. Cal. May 18, 2011) (granting expedited discovery for plaintiffs even before a preliminary injunction had been filed). Indeed, "[g]ood cause for expedited discovery is frequently found in cases . . . where the plaintiff seeks a preliminary injunction." Berlin Media Art e.k. v. Does 1 through 146, No. CIV. S-11-2039 KJM, 2011 WL 4056167 (E.D. Cal. Sept. 12, 2011) (citations omitted). The Advisory Committee Notes to the 1993 amendments to Rule 26(d) underscore this conclusion, stating that discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for a preliminary injunction[.]"

---

[4] Once the Court has authorized discovery, to the extent that the parties have any discovery disputes, including regarding the appropriate scope of discovery, the parties would raise those issues with Magistrate Judge Crawford. CivLR 26.1(e)). Any disputes regarding the scope of potential disputes should not be used to bar the parties from conducting ***any*** discovery before the preliminary injunction hearing.

Mem. of Points and Authorities in    8    Case No: 12-CV-00668-CAB-KSC
Support of *Ex Parte* Application

Factors that courts consider in whether to grant expedited discovery include a) whether a preliminary injunction is pending, b) the breadth of the discovery requests, c) the purpose for requesting the expedited discovery, d) the burden on the responding party to comply with the requests, and e) how far in advance of the typical discovery process the request was made.  Apple Inc. v. Samsung Elec. Co., Ltd., No. 11-CV-01846-LHK, 2011 WL 1938154, *1 (N.D. Cal. May 18, 2011) (granting expedited discovery).  All of these factors favor discovery in this case.  Facebook is entitled to discovery to defend itself against an injunction that would deprive it of control over its own product and its ability to protect its users' experience.  Recognizing the need for efficient proceedings, Facebook has narrowly tailored the breadth of discovery to the issues raised in Sambreel's preliminary injunction motion, and Facebook is not requesting discovery beyond what is necessary to defend itself against Sambreel's injunction.  See Basile Decl. ¶ 9 Ex. E.   The discovery burden will be shared equally among the parties because the proposed schedule is mutually reciprocal; Sambreel may serve reasonably tailored discovery on Facebook.  Tellingly, even though Facebook provided Sambreel proposed potential discovery topics, including document request topics, interrogatory topics and potential depositions, on Tuesday, March 27, Sambreel has not identified a single discovery request that it would provide voluntarily.  See Basile Decl. ¶ 8.  In fact, Sambreel does not believe any discovery is necessary[5] and refused to propose how Facebook could narrow the scope of its proposed discovery to reach an agreement.  Without a court order authorizing its discovery, Facebook will be defending its preliminary injunction motion with at least one hand tied behind its back.

### A.     Sambreel Cannot Unilaterally Avoid Discovery With Cries Of Irreparable Harm And Overly Burdensome Requests.

To avoid any discovery or extension of the hearing, Sambreel contends that it is suffering irreparable harm, but the facts do not support its claim.  ***First***, Sambreel waited eight months after it allegedly learned of Facebook's steps to protect its users to file a motion for a preliminary injunction, choosing to build its "case" against Facebook rather than seeking immediate action.  ***Second***, Sambreel should not be suffering any harm from Facebook because Sambreel claims it is currently running ads on Facebook, Facebook is not and has not been intentionally gating

---

[5] To the extent that Sambreel elects not to take discovery of Facebook, Sambreel should have no difficulty responding to Facebook's limited requests.

Sambreel's users, and has even offered not to gate them until after a preliminary injunction hearing. ***Third***, even if hypothetically Sambreel is not receiving advertising revenue because of Facebook's actions, that harm is not irreparable because money damages would redress it and Facebook is sufficiently capitalized. The Court should evaluate Sambreel's cries of irreparable harm with a healthy dose of skepticism.

Likewise, the Court should be wary of Sambreel's assertion that "Facebook is seeking a full round of merits discovery" before the preliminary injunction hearing. *See* Basile Decl. ¶ 7 Ex. D. Facebook focused its discovery requests on the four elements of a preliminary injunction, is not seeking a full compliment of party discovery (only 15 document requests, 11 interrogatories and 5 depositions), and is not seeking sweeping document discovery. For example, rather than seeking "all documents" in each of its requests, Facebook is requesting the more narrowly tailored set of "documents sufficient to show" in 12 of its 14 proposed document requests. *Id.* ¶ 9 Ex. E. Given Sambreel's request for immediate and extraordinary Court intervention through this motion for an affirmative preliminary injunction, it is difficult to accept Sambreel's assertions that Facebook's discovery "would impose a considerable burden." *Id.* ¶ 7 Ex. D.[6]

**B.   Facebook's Proposed Order Provides A Reasonable Schedule For Expedited Discovery In Advance of This Preliminary Injunction Hearing.**

The proposed discovery schedule is essential to a full and fair resolution of Sambreel's motion. Under Facebook's proposal, the parties will be able to complete fact and expert discovery of the issues raised in Sambreel's motion with only a modest adjustment to the existing schedule. Specifically, Facebook proposes the following schedule:

| | |
|---|---|
| Serve Discovery Requests:[7] | Friday, April 6 |
| Start Third Party Discovery: | Friday, April 6 |
| Discovery Responses:[8] | Tuesday, May 1 |
| Conduct Fact Depositions: | Tuesday May 8 - Tuesday, May 22 |
| Identify Experts: | Tuesday, May 8 |

---

[6] In any event, when discovery is served, the Court or the Magistrate Judge can assess any needed narrowing if they disagree.
[7] Facebook is proposing that the parties be limited to no more than 15 document requests, 11 interrogatories, and 5 party depositions.
[8] The parties' document productions must be substantially complete by this same date.

Mem. of Points and Authorities in Support of *Ex Parte* Application — 10 — Case No: 12-CV-00668-CAB-KSC

|   |   |
|---|---|
| Exchange Expert Reports: | Tuesday, May 15 |
| Exchange Rebuttal Expert Reports: | Tuesday, May 22 |
| Conduct Expert Depositions: | Wednesday, May 23 - Wednesday, May 30 |
| Opposition Brief Due: | Wednesday, June 6 |
| Reply Brief Due: | Wednesday, June 13 |
| Hearing: | 2 day hearing at court's convenience |
| Proposed Findings of Fact and Conclusions of Law: | 10 days after last hearing day |

The length of Facebook's proposed schedule is well within the range of approved preliminary injunction schedules. *See, e.g.*, *Two Jinn, Inc. v. Gov't Payment Serv., Inc.*, No. 09-CV-2701 JLS BLM, 2010 WL 1329077 (S.D. Cal. Apr. 1, 2010) (just under four months between filing and ruling); *Bayer Corp. v. Roche Molecular Sys., Inc.*, 72 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999) (over six months between filing and ruling to allow time for discovery).[9] And given Sambreel's delay of over eight months in filing its complaint and preliminary injunction motion, it strains credulity for Sambreel to cry foul to an eight-week adjustment to the existing schedule.

### III. AN EXPEDITED MOTION TO DISMISS SCHEDULE IS NECESSARY TO RESOLVE THRESHOLD LEGAL ISSUES IN ADVANCE OF A PRELIMINARY INJUNCTION HEARING.

As part of its proposed scheduling order, Facebook also proposes an expedited motion to dismiss briefing schedule that allows the parties and the Court to quickly resolve fundamental legal issues, stark pleading deficiencies, and vague and imprecise pleading in the complaint. Facebook has the right to know with precision the claims it is litigating against in an injunction proceeding. This can be done while still letting Sambreel pursue its preliminary injunction motion in a timely manner. Specifically, Facebook proposes the following briefing schedule:

|   |   |
|---|---|
| Motion to Dismiss Due: | Wednesday, April 4 |
| Opposition Due: | Friday, April 13 |
| Reply Due: | Thursday, April 19 |

---

[9] *See also Rogers-Dial v. Rincon Band of Luiseno Indians*, No. 10-cv-2656-WQH-POR, 2011 WL 2619232, at *2 (S.D. Cal. July 1, 2011) (over three months between filing and ruling); *Pacific Coast Breaker, Inc. v. Connecticut Elec., Inc.*, No. 10-3134 KJM EFB, 2011 WL 2073796, at *2 (E.D. Cal. May 24, 2011) (over five months between filing and ruling during which time the parties exchanged discovery).

| | |
|---|---|
| Oral Argument: | Friday, April 20 - Thursday, April 26 at court's convenience |

Importantly, Sambreel will not be prejudiced by this expedited briefing schedule because Facebook is willing to proceed with the limited fact and expert discovery described above while its expedited motion to dismiss is pending.

Courts frequently resolve a defendant's legal arguments on a motion to dismiss before deciding preliminary injunction motions. *See, e.g.*, *Douglas v. Dry Creek Rancheria Band of Pomo Indians*, No. CV-08-159-S-EJL, 2009 WL 224538, at *1 (D. Idaho Jan. 29, 2009 (granting defendant's motion to dismiss after having postponed briefing on plaintiffs' motion for preliminary injunction); *Maxwell Technologies, Inc. v. Nesscap, Inc.*, 508 F. Supp. 2d 837, 839-840 (S.D. Cal. 2007) (noting that the court had previously granted defendants' *ex parte* application to continue the preliminary injunction hearing until after deciding threshold motion to dismiss issues); *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, No. C-99-2621 MHP, 1999 WL 33295030, at *1 (N.D. Cal. Nov. 12, 1999) (granting defendants' motion to dismiss for lack of standing after having postponed plaintiffs' preliminary injunction motion).

That course is particularly appropriate here because Sambreel's complaint contains core legal deficiencies that will likely render preliminary-injunction proceedings completely unnecessary. Among other issues, Sambreel's antitrust theory is based on Sambreel's assertion that it can ***unilaterally*** set the terms on which it does business with Facebook, a premise which courts have repeatedly rejected. *See Verizon Commc'n Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407–08 (2004) ("[T]he Sherman Act does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal."); *Fairdale Farms, Inc. v. Yankee Milk, Inc.*, 715 F.2d 30, 34 (2d Cir. 1983) ("Section 2 of the Sherman Act does not give purchasers the exclusive right to dictate the terms upon which they will deal."). Because Facebook offers neutral terms and conditions for third-party integration with Facebook, and Sambreel admits that it has ***rejected*** those terms, Sambreel's demand to "free ride" through the antitrust laws must fail as a matter of law. Moreover, antitrust claims have certain foundational requirements, including the pleading of a cognizable antitrust market. Here, Sambreel is attempting to gerrymander ***four*** different antitrust markets to support its four claims.

Finally, Sambreel's complaint fails to plead core standing requirements. A plaintiff asserting

antitrust claims must plead an "antitrust injury," which demands significantly more than simple harm to a competitor like Sambreel has alleged. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 901-02 (9th Cir. 2008) (discussing antitrust-standing requirements). In order to avoid unnecessary proceedings, "[c]ourts vet a plaintiff's ability to establish antitrust injury at the pleading stage, because a plaintiff's ability to establish antitrust injury depends less on the plaintiffs' proof than on its underlying theory of injury[.]" *Korea Kumho Petrochemical v. Flexsys America LP*, No. 07-1057 MJJ, 2008 WL 686834, at *3 (N.D. Cal. March 11, 2008). Thus, Sambreel's failure to plead basic standing and other essential elements of its claims should be tested prior to engaging in a costly and fact-intensive preliminary injunction proceeding. *See Table Bluff*, 1999 WL 33295030, at *1 (postponing preliminary injunction motion to resolve challenge to standing).

## CONCLUSION

For the reasons stated above, Facebook respectfully requests that the Court hold a Rule 16 initial scheduling conference at its earliest convenience to establish a schedule that a) establishes a briefing and hearing schedule for Sambreel's preliminary injunction motion, b) establishes a mutually reciprocal expedited discovery schedule in advance of additional briefing on Sambreel's preliminary injunction motion, and c) allows the parties to quickly brief and resolve Sambreel's pleading deficiencies through an expedited motion to dismiss schedule.

DATED:  March 28, 2012

Respectfully submitted,
KIRKLAND & ELLIS LLP

/s/ *James F. Basile*
James F. Basile
james.basile@kirkland.com
Elizabeth L. Deeley
elizabeth.deeley@kirkland.com
Susan Davies (*Pro Hac Vice Application Forthcoming*)
susan.davies@kirkland.com
Ian R. Conner (*Pro Hac Vice Application Forthcoming*)
ian.conner@kirkland.com

Attorneys for Defendant
Facebook, Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certify that all counsel of record who have consented to electronic service are being served with a copy of the **DEFENDANT FACEBOOK, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY** via the CM/ECF system on March 28, 2012.

DATED: March 28, 2012                                By: *s/ James F. Basile*
                                                                             James F. Basile