1  Gregory P. Olson (Ca. Bar No. 177942)
   LAW OFFICE OF GREGORY P. OLSON
2  501 West Broadway, Suite 1370
   San Diego, CA 92101
3  Telephone: (619) 564-3650
   Facsimile: (619) 233-1969
4  greg@olsonesq.com

5  Daniel Kotchen (*Pro Hac Vice Application Forthcoming*)
   Daniel Low (*Pro Hac Vice Application Forthcoming*)
6  Robert Klinck (*Pro Hac Vice Application Forthcoming*)
   KOTCHEN & LOW LLP
7  2300 M Street NW, Suite 800
   Washington, DC 20037
8  Telephone (202) 416-1848
   Facsimile: (202) 280-1128
9  dkotchen@kotchen.com
   dlow@kotchen.com
10 rklinck@kotchen.com

11 *Attorneys for Plaintiffs*

12

13              IN THE UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

15

16 SAMBREEL HOLDINGS LLC; YONTOO LLC;      Case No. 3:12-CV-00668-CAB-KSC
   and THEME YOUR WORLD LLC,
17                                          **PLAINTIFFS' OPPOSITION TO**
              Plaintiffs,                   **FACEBOOK'S *EX PARTE* APPLICATION**
18                                          **FOR AN EXPEDITED RULE 16**
              vs.                           **SCHEDULING CONFERENCE AND AN**
19                                          **ORDER FOR EXPEDITED BRIEFING AND**
   FACEBOOK, INC.,                          **DISCOVERY.**
20
              Defendant.                    Hon. Karen S. Crawford
21
22                                          Hearing Date:
                                            Hearing Time:
23                                          Dept:

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................. 4

III.    ARGUMENT ................................................................................................. 7

        A.      Facebook Should Not Be Allowed To Conduct Expedited Discovery. ........................... 8

                1.      Under The Law, Facebook Must Demonstrate "Good Cause" For Expedited Discovery On A Request-By-Request Basis. ...................................... 8

                2.      Facebook Does Not Attempt To Demonstrate Good Cause. .............................. 10

                3.      Facebook Does Not Need The Discovery It Requests. ...................................... 10

                4.      Facebook's Requested Discovery Would Impose An Unprecedented Burden. ............................................................................................... 11

                5.      Facebook's Timeline Is Unreasonable, Further Prejudicing Sambreel. ............... 13

                6.      Any Hardship Faced By Facebook Is Of Its Own Making. ................................ 14

        B.      There Is No Reason To Expedite Briefing On The Motion To Dismiss. ......................... 15

IV.     CONCLUSION ............................................................................................ 18

## **TABLE OF AUTHORITIES**

**Cases**

*American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063 (C.D. Cal. 2009) ............................................... 9

*Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, 2011 WL 1938154 (N.D. Cal. May 18, 2011) ...................................................................................................................3, 8, 12

*Berlin Media Arts e.k. v. Does 1 through 146*, No. CIV. S-11-2039 KJM, 2011 WL 4056167 (E.D. Cal. Sept. 12, 2011) ..................................................................................................................... 8

*Certified Gasoline Co. v. Dept. of Energy*, No. C-2-81-379, 1981 WL 1280 (S.D. Ohio Apr. 20, 1981) ......................................................................................................................................... 15

*Chevron Corp. v. Donzinger*, 768 F. Supp. 2d 581 (S.D.N.Y. 2011) ...................................................... 14

*Ciena Corp. v. Jarrard*, 202 F.3d 312 (4th Cir. 2000) ............................................................................ 7

*DaSilva v. Wells Fargo Bank, N.A.*, 3:10-cv-00381-RCJ-VPC, 2010 WL 4258528 (D. Nev. Oct. 20, 2010) ...................................................................................................................................... 15

*DaSilva v. Wells Fargo Bank, N.A.*, No. 3:10-cv-00381-RCJ-VPC, 2010 WL 3910139 (D. Nev. Oct. 1, 2010) ...................................................................................................................................... 15

*Deer Valley Resort Co., LP v. Christy Sports, LLC*, No. 2:07-CV-00904DAK, 2007 WL 4570664 (D. Utah Dec. 21, 2007) ................................................................................................................ 16

*General Motors Corp. v. Let's Make A Deal*, 223 F. Supp. 2d 1183 (D. Nev. 2002) .............................. 7

*Gomez v. Wells Fargo Bank, N.A.*, No. 11-cv-2251, 2012 WL 642767 (S.D. Cal. Feb. 28, 2012) ......... 15

*Granny Goose Food Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423 (1974) ........................................................................................................ 14

*Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166, 2008 WL 3992353 (S.D. Cal. Aug. 28, 2008) .................................................................................................................2, 9, 10, 12

*Inverness Corp. v. Whitehall Labs*, 819 F.2d 48 (2d Cir. 1987) ............................................................. 14

*Laster v. District of Columbia*, 439 F. Supp. 2d 93 (D.D.C. 2006) ......................................................... 7

*Massachusetts Municipal Wholesale Electric Co. v. Washington Electric Cooperative, Inc.*, No. 88-0065-F, 1988 WL 39943 (D. Mass. Apr. 29, 1988) .......................................................................... 15

*Natural Resources Defense Council, Inc. v. Winter*, 645 F. Supp. 2d 841 (C.D. Cal. 2007).................. 16

*Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273 (N.D. Cal. 2002).........................3, 8, 12

*Singh v. Ilchert*, 784 F. Supp. 759 (N.D. Cal. 1992)............................................................................... 15

*Southern California Stroke Rehabilitation Associates, Inc. v. Nautilus, Inc.*, 782 F.Supp.2d 1096 (S.D. Cal. 2011) .................................................................................................................................... 10

PLAINTIFFS' OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION

## I.    INTRODUCTION

This case stems from Facebook's campaign to drive a competitor out of the market.  Facebook has engaged in an ongoing, illegal campaign to force Sambreel to stop offering advertising that competes directly with Facebook's advertising.  On March 19, 2012, Sambreel filed this action and filed a motion for preliminary injunction that seeks to stop the two most damaging aspects of Facebook's anticompetitive scheme:  (1) Facebook's coercion of advertising partners to boycott Sambreel's product, and (2) Facebook's "gating" of Sambreel users – *i.e.*, scanning Facebook users' web browsers and requiring users to uninstall Sambreel's products before accessing www.facebook.com.  Currently, the motion for preliminary injunction is set for a hearing on April 25.  Facebook requests that this Court delay that hearing so that it can undertake "expedited" discovery and so that it can file a motion to dismiss.  This Court should deny Facebook's *ex parte* application.

First, the preliminary injunction hearing should be expedited because Sambreel is suffering ongoing irreparable harm.  The irreparable harm Sambreel is currently facing is described in detail in Sambreel's preliminary injunction papers.  *See* Doc. No. 3-1.[1]  To this day, Facebook continues to gate a small number of Sambreel users, directing them to uninstall all Sambreel products prior to allowing them to access Facebook's website.  And Facebook has not relented on its group boycott, denying Sambreel access to a large portion of the advertising market.  These actions are significant and are causing lasting, irreparable harm on a daily basis.  In light of the ongoing harm, the motion for preliminary injunction should be heard and decided without delay.

Second, Facebook is already in a position to respond to Sambreel's motion for preliminary injunction.  Facebook does not dispute that it engaged in the conduct challenged by the preliminary injunction.  Presumably, Facebook knows why it engaged in this course of conduct.  Facebook should, therefore, already be prepared to explain its actions to the Court.  Indeed, Facebook spends much of its *ex parte* describing why its actions were justified.  Facebook nevertheless demands a delay so that it can take expedited discovery.  Facebook either is seeking a delay for its own sake or is hoping to find

---

[1] References to "Doc. No." refer to documents already filed in this action according to their docket entry number.

PLAINTIFFS' OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION

something in discovery to provide an *ex post* justification for its actions. Neither rationale justifies delay.

Third, Facebook has not met – or even attempted to meet – the legal standard for granting expedited discovery. Facebook must demonstrate that there is "good cause" to allow each of its discovery requests on an expedited basis. This requires Facebook to demonstrate that it has a strong need for each particular item of discovery and that its need outweighs the burden on or prejudice to Sambreel. Rather than attempting to make this showing, Facebook simply asks this Court to take its word for it, asserting broadly: "Facebook is entitled to discovery to defend itself against an injunction that would deprive it of control over its own product and its ability to protect its users' experience." Doc. No. 10-1 at 9. Facebook's unsupported, conclusory assertions are not entitled to weight. Its obligation is to *demonstrate* its entitlement to discovery, not simply to assert it.

Fourth, Facebook has not cited a single case that supports its request for expedited discovery. The cases that Facebook cites involve a *plaintiff* seeking expedited discovery – with varying success. Facebook does not cite a single case involving a *defendant* requesting, much less receiving, expedited discovery to respond to a preliminary injunction. Sambreel has located a single case in which a defendant requested such discovery, and, in that case, this Court rejected a much more limited set of requests than Facebook seeks in spite of the fact that the defendant there attempted to explain its need for the particular discovery. *See Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166, 2008 WL 3992353, at *1 (S.D. Cal. Aug. 28, 2008).

Fifth, the scope of Facebook's request for "expedited" discovery is unprecedented. Facebook seeks to serve fifteen wide-ranging document requests, eleven interrogatories (including contention interrogatories), and four deposition notices.[2] Facebook's expedited discovery amounts to a relatively complete round of discovery on the merits, and it would take Sambreel several *months* to comply just with the document requests. In the past, courts – including in the very cases cited by Facebook in its *ex parte* application – have readily rejected expedited discovery requests that go beyond one or two very narrowly defined requests for production. *See, e.g., Apple, Inc. v. Samsung Electronics Co., Ltd.*, No. 11-

---

[2] Facebook also suggests that it will want to take some third-party discovery. Facebook does not identify the third party, explain the topics of the discovery, or set out the particular requests it will make.

CV-01846-LHK, 2011 WL 1938154, at *3-*4 (N.D. Cal. May 18, 2011) (rejecting a request for a deposition and the production of documents and allowing *only* the production of five sample products, the product packaging, and package inserts); *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276-77 (N.D. Cal. 2002) (requiring a defendant in a patent infringement suit to produce core technical documents of a single accused product and noting that the request was narrowly tailored and did not require the production of a witness for a deposition).  The breadth of Facebook's request is shocking when considered against the case law, so it is hard to fathom how Facebook could have even a good faith basis for its request.

Sixth, Facebook's request that this Court expedite the briefing and hearing on an as-of-yet unfiled motion to dismiss and delay the preliminary hearing schedule until after that motion is decided is without merit.  Facebook is free to present the legal arguments it would submit as part of the motion to dismiss as bases to deny the motion for preliminary injunction.  Facebook nevertheless suggests that this Court should delay the preliminary injunction hearing so that it can address underlying "legal issues" first.  This request is an unabashed attempt to delay for its own sake.  In light of the fact that Sambreel's motion for preliminary injunction is already partially briefed and on the Court's calendar, the most expeditious means for Facebook to raise these legal challenges is as part of its opposition to the motion for preliminary injunction.[3]

Finally, the balance of equities supports proceeding with the motion for preliminary injunction expeditiously.  There is no prejudice in proceeding with the hearing on the motion for preliminary injunction.  Facebook will be free to conduct discovery during the ordinary course.  And either party will be free to ask the Court to modify any preliminary injunction that is issued based upon newly discovered facts or circumstances.  Delaying a decision on the motion for preliminary injunction, on the other hand will lead to continuing irreparable harm to Sambreel.  As such, the best course is to proceed with the preliminary injunction hearing without delay.  Facebook's motion should be denied.

---

[3] To allow for an orderly procession and to avoid unnecessary work for the parties and the Court, Sambreel would willingly stipulate that Facebook be given 21 days after the Court's decision on the preliminary injunction to file a motion to dismiss.  This approach avoids duplicative briefing and will allow Facebook to avoid briefing issues the Court has already rejected.

## II.    STATEMENT OF FACTS

This case stems from a long-running dispute between Facebook and Sambreel, and Facebook has been aware of the relevant issues for a considerable amount of time.  As set forth in Sambreel's Memorandum of Points and Authorities in Support of its Motion for Preliminary Injunction, Sambreel and Facebook have a long history of interactions.  *See* Doc. No. 3-1 at 6-10.  Facebook has had legal counsel interacting with Sambreel since October 2010.  *See* Doc. No. 3-8 at 54.  Throughout these interactions, Sambreel has attempted to address Facebook's purported concerns and has altered the operation of PageRage on multiple occasions to address Facebook's requests.[4]

In spite of Sambreel's best efforts to address Facebook's concerns and apparently after consulting with legal counsel, Facebook initiated the course of anticompetitive behavior that Sambreel seeks to enjoin with the motion for preliminary injunction.  Beginning in July or August 2011, Facebook began contacting Sambreel's advertising partners to coerce them to cease doing business with PageRage.  As a result of these contacts, Sambreel lost seven major advertising partners between the end of August and the end of November.  *See* Doc. No. 3-6, ¶ 3.

In December 2011, Facebook chose to escalate the dispute between the parties by sending a cease-and-desist letter to Sambreel and by making various statements to the media about its intention to employ technical means to block Sambreel's users from accessing Facebook.  Sambreel responded immediately.  On December 16, 2011, Sambreel sent a cease-and-desist letter to Facebook, which raised various antitrust issues.  *See* Letter from M. Radcliffe to J. Cutler (Dec. 16, 2011) (attached as Ex. 1 to the Declaration of R. Klinck).  Facebook nevertheless chose to move forward with its gating campaign.  Sambreel promptly lost over one million users and was forced to accede to Facebook's demand to stop advertising on PageRage.

The parties had a series of discussions in January 2012, but those discussions did not resolve the issue.  During this period, Facebook continued to gate some PageRage users in spite of the agreement to stop doing so.  At the time, Facebook stated that there were technical glitches that were causing the

---

[4]  Sambreel removed PageRage from the Facebook Platform at Facebook's request and has been operating the product independent from that system since July 2009.  As a result, PageRage is not subject to Facebook's terms and conditions.

continued gating.  On January 30, 2012, Facebook's in-house counsel sent an e-mail to Sambreel's CEO, which noted that the parties were at an impasse and foretold litigation:  "I will have our lawyers reengage with yours and Facebook will take what action we deem necessary to maintain the integrity of our site and services and protect our rights and users."  *See* E-Mail from C. Clark to A. Trouw (Jan. 30, 2012) (attached as Ex. 2 to the Declaration of R. Klinck).[5]  Since that time, Facebook has continued to gate some PageRage users, albeit not in the same numbers as in December 2011.

Sambreel filed its Complaint and Motion for Preliminary Injunction on March 19, 2012.  Sambreel provided Facebook's in-house and outside counsel with courtesy copies of these filings the same day.  *See* E-Mail from R. Klinck to C. Clark and J. Cutler (Mar. 19, 2012) (attached as Ex. 3 to the Declaration of R. Klinck).  The hearing on the preliminary injunction was initially set for April 23, 2012.  After the case was transferred, this Court set a hearing date of April 25, 2012.

On March 26, 2012, Facebook's counsel suggested to Sambreel's counsel that the hearing date needed to be moved so that the parties could engage in expedited discovery and litigate an as-of-yet unfiled motion to dismiss.  In spite of Sambreel's belief that there is no need for a delay and no need to conduct discovery, Sambreel's counsel responded later that day by offering to agree to Facebook's proposal so long as Facebook would agree to a stipulated order that would prevent it from engaging in the conduct Sambreel is challenging – both the gating and the boycott – during the interim.  *See* Doc. No. 10-3 at 4-5 (E-Mail from D. Kotchen to J. Basile).  Facebook balked at this proposal on multiple occasions.  *See id.* at 4 (E-Mail from J. Basile to D. Kotchen) (referring to Sambreel's proposal as a "counterproductive demand"); *see also id.* at 2 (E-Mail from J. Basile to D. Kotchen).  In a telephone call on March 28, 2010, Facebook's counsel suggested that he was willing to send an e-mail to Sambreel's

---

[5]  Facebook incorrectly asserts repeatedly that Sambreel should not be heard to complain about irreparable harm because it waited eight months to file suit.  This argument badly distorts the facts.  Facebook started to threaten Sambreel's advertising partners in July or August.  But the departures of advertisers from PageRage were spaced out throughout the fall, and the magnitude of the loss did not become clear until late 2011.  Facebook began its gating campaign soon thereafter, forcing Sambreel to cease advertising on PageRage.  Now Sambreel is, in effect, starting from scratch:  it's trying to relaunch PageRage advertising, but – as a result of the boycott – cannot secure the business of its primary advertising partners.  Thus, the demand for PageRage advertising is lower, Sambreel's ability to market PageRage is diminished, and the rates for PageRage advertising are depressed.  Facebook cannot credibly dispute that its boycott is causing irreparable harm.

counsel stating that Facebook would not gate Sambreel users until the preliminary injunction was decided. That offer did not include any enforceable order or a proposal that Facebook would cease the boycott. *See* Declaration of R. Klinck ¶ 2.[6]

Facebook has now filed its *Ex Parte* Application requesting a delay in the preliminary injunction hearing to conduct expedited discovery and to conduct expedited briefing on a motion to dismiss. The discovery Facebook proposes is incredibly broad and includes: (a) four depositions of Sambreel employees (without any limitations);[7] (b) eleven interrogatories, including a number that require identification of all documents, facts, and witnesses that support the allegations in the complaint and preliminary injunction papers; and (c) fifteen document requests, including requests for wide-ranging categories of documents related to Sambreel products; all communications with advertisers; all communications between Sambreel and the "past, current, and prospective" users of many of its products; and all documents identified in Sambreel's interrogatory responses, which (as mentioned) request Sambreel to identify all documents relevant to its case. *See* Doc. No. 10-7.

Facebook concedes that there remains some residual gating of PageRage users. *See* Doc. No. 10-1 at 3 n.2 (admitting that an "immaterial number of PageRage users may be unintentionally gated"). Facebook maintains that this is not intentional, but is instead the result of "previous detection due to malware mitigation." *Id.* Facebook offers no explanation for why it cannot simply turn off the gating. Moreover, Sambreel continues to receive reports that some of its users are being instructed to remove the Yontoo Platform in order to access Facebook's website. *See* Declaration of A. Trouw ¶ 2.[8]

---

[6] In his declaration, James Basile states that Facebook offered to agree in writing not to gate. *See* Doc. No. 10-2, ¶ 8. The precise offer was that Mr. Basile would send an e-mail to Sambreel's counsel with this assurance. *See* Klinck Decl. ¶ 2. Sambreel's counsel considered this proposal but concluded it was unworkable for a number of reasons, including that Facebook's proposed schedule is unrealistic in light of its document requests and the offer did not include an agreement to cease the boycott.

[7] Facebook requests the right to take five depositions, and in earlier correspondence, Facebook suggested its desire to take a Rule 30(b)(6) deposition without any description of the topics it intended to cover. Presumably, this is the fifth deposition that Facebook intends to pursue if the Court allows expedited discovery.

[8] It is easy enough for Facebook to simply assert that the gating is "immaterial" when it is not the party that is losing users on a daily basis. Facebook presumably would not view it as "immaterial" if Sambreel were causing it to lose even a single user on a daily basis. It will likely be exceptionally difficult for Sambreel to reacquire users who are lost as a result of the gating. As such, Sambreel continued loss of users – however large – as a result of Facebook's actions is causing irreparable harm on a daily basis.

## III.    ARGUMENT

The single most pressing issue in this case at this juncture is to alleviate the irreparable harm Sambreel is suffering as a result of Facebook's actions.  Facebook will suffer no prejudice if Sambreel's preliminary injunction is decided at the currently set hearing; yet Sambreel suffers ongoing irreparable harm each day in which resolution of Sambreel's motion is delayed.  Accordingly, this Court should not delay the hearing on the preliminary injunction, should not grant Facebook's request for expedited discovery, and should not enter an order expediting the motion to dismiss briefing.  Under this Court's Local Rules, a party who files a motion, including a preliminary injunction motion, is entitled to set the motion for a hearing at the Court's earliest convenient time that is at least 28 days after the filing.  *See* Local Rule 7.1(b) & (e)(1).  Sambreel acted within its rights to schedule its motion for preliminary injunction under this Rule, initially obtaining a hearing date that was 35 days after the motion was filed (and that date has been extended by two days).

Moreover, the current schedule is consistent with the case law regarding the timing for consideration of motions for preliminary injunctions.  Because motions for preliminary injunction are aimed at preventing irreparable harm, courts have noted that such motions should be resolved expeditiously.  *See, e.g., Ciena Corp. v. Jarrard*, 202 F.3d 312, 319-20 (4th Cir. 2000) (noting that motions for preliminary injunctions are by their nature time-sensitive and affirming district court's entry of preliminary injunction when defendant was given 2 days notice); *Laster v. District of Columbia*, 439 F. Supp. 2d 93, 99-101 (D.D.C. 2006) (noting that the urgency of a preliminary injunction request controls timing and rejecting the argument that allowing defendants less than five days was improper).  The defendant must be given notice of a preliminary injunction hearing and an adequate opportunity to respond, but courts have often held that notice of five days or less is sufficient.  *See General Motors Corp. v. Let's Make A Deal*, 223 F. Supp. 2d 1183, 1189 (D. Nev. 2002) (collecting cases).

Thus, the current hearing date is presumptively appropriate under both the Local Rules and the requirements for filing and hearing a motion for a preliminary injunction.  Facebook asserts, however, that the schedule should be extended so that it may conduct expedited discovery and so that the Court may consider an as-of-yet unfiled motion to dismiss.  These arguments are without merit.

**A.      Facebook Should Not Be Allowed To Conduct Expedited Discovery.**

Facebook's suggestion that this Court should delay the schedule so that it may conduct expedited discovery is without merit because Facebook is not entitled to conduct expedited discovery.

**1.      Under The Law, Facebook Must Demonstrate "Good Cause" For Expedited Discovery On A Request-By-Request Basis.**

As Facebook concedes, it must demonstrate "good cause" to take expedited discovery.  *See* Doc. No. 10-1 at 8 (citing *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) and *Apple, Inc. v. Samsung Elec. Co., Ltd.*, No. 11-CV-01846-LHK, 2011 WL 1938154, *1 (N.D. Cal. May 18, 2011)).  This standard requires Facebook to demonstrate that it has a "need" for the discovery and that its "need" outweighs the burden that would be imposed on Sambreel by the expedited discovery.  *See Semitool*, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.").

Facebook incorrectly asserts that this Court can – and should – grant Facebook's request for expedited discovery without considering the propriety of any given request, leaving for another time the decision about the propriety of each request.  *See* Doc. No. 10-1 at 8 fn. 4 & 10 fn. 6.  This assertion is stunning and legally incorrect.[9]  Notably, Facebook does not offer any authority to support this proposition.  And the cases that Facebook cites in its discussion of expedited discovery directly contradict its position.  In each of those cases, the Court expressly considered the propriety of *each* discovery request in deciding whether to grant the request for expedited discovery.  *See Apple*, 2011 WL 1938154, at *3-*4 (considering requests individually and concluded there was not good cause with respect to two of three requests); *Semitool*, 208 F.R.D. at 277 (considering whether good cause was shown for single request); *Berlin Media Arts e.k. v. Does 1 through 146*, No. CIV. S-11-2039 KJM, 2011 WL 4056167, at *2 (E.D. Cal. Sept. 12, 2011) (considering whether good cause was met for specific request).  That is also the approach that judges in this District and other districts in the Ninth Circuit have

---

[9] Facebook's position is also perplexing in light of a meet and confer call held by the parties on March 28, 2012.  During that call, Sambreel's counsel noted that Facebook bore the burden of showing good cause for each request specifically.  *See* Klinck Decl. ¶ 3.  Sambreel's counsel understood Facebook's counsel to say they understood this fact and make such a showing.  *See id.*

PLAINTIFFS' OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION

adopted.  *See, e.g., Hansen Beverage Co. v. Innovation Ventures, LLC*, No. 08-cv-1166, 2008 WL 3992353, at *1-*2 (S.D. Cal. Aug. 28, 2008) (considering requests individually and concluding that the good cause standard was not met for any request); *American LegalNet, Inc. v. Davis*, 673 F. Supp. 2d 1063, 1067-71 (C.D. Cal. 2009) (same).

Facebook's suggestion that a court should make a "good cause" decision removed from the individual requests also makes no sense in practice.  How is a court to consider the need for or burden of a request without considering the particular requests individually?  Without considering the particular requests, a court would be left to consider platitudes and generalizations that are completely unhelpful.

Facebook apparently believes that it may rely simply upon the fact that Sambreel has filed a motion for preliminary injunction to demonstrate a need for the discovery.  *See* Doc. No. 10-1 at 9 ("Facebook is entitled to discovery to defend itself against an injunction that would deprive it of control over its own product and its ability to protect its users' experience.").  But Facebook's bald assertion begs the question of whether it needs the discovery to respond to the preliminary injunction hearing.  And the law is clear that "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction."  *American LegalNet*, 673 F. Supp. 2d at 1066.  Thus, Facebook may not simply rely upon the fact that Sambreel has filed a motion for a preliminary injunction; Facebook must make an affirmative showing based upon the facts of this case that it needs the particular discovery it is requesting (and that its need outweighs the burden on Sambreel).

Moreover, Facebook has not cited a *single* case in which a court ordered expedited discovery requested by a defendant to oppose a preliminary injunction.  In fact, Facebook has not cited a single case in which a defendant made a request for expedited discovery.  Each of the cases cited by Facebook involved a *plaintiff* requesting expedited discovery.  The only case that Sambreel has located in which a defendant sought expedited discovery to respond to a preliminary injunction is the decision in *Hansen Beverage Co.* that *denied* the request.  *See Hansen Beverage Co.*, No. 08-cv-1166, 2008 WL 3992353, at *1-*2 (S.D. Cal. Aug. 28, 2008).  In *Hansen*, the defendant sought to depose certain individuals who had submitted declarations in support of the motion for preliminary injunction and sought the production of two categories of documents.  *See id.* at 1.  This Court rejected the defendant's request, finding that the

defendant had not demonstrated a need for the depositions and that the document requests were overly burdensome because they would require "an extensive search for electronically stored information."  *See id.* at \*2.

### 2.  Facebook Does Not Attempt To Demonstrate Good Cause.

In spite of the clear legal authority requiring Facebook to make an individualized showing of good cause with respect to each discovery request, Facebook does not even attempt to make a good cause showing for a single one of its requests.  Facebook does not explain why it needs any of the requests and does not discuss the burden of any request.  Because Facebook has not attempted to make the required showing, its motion should be denied.[10]  It is not this Court's job – or Sambreel's responsibility – to divine Facebook's need for the particular requests or to assess the burden without Facebook's assistance.[11]

### 3.  Facebook Does Not Need The Discovery It Requests.

The facts of this case demonstrate that Facebook does not need the requested discovery to properly respond to the motion for preliminary injunction.  Sambreel's preliminary injunction motion focuses on actions that Facebook *already undertook* – the group boycott and the gating.  Facebook clearly already knows *why* it decided to engage in the conduct that Sambreel is challenging and it has ample information to respond to Sambreel's motion.  Having made the decision to engage in actions that have indisputably harmed (and continue to harm) Sambreel, Facebook should be prepared to explain to the Court why those actions were lawful.  There is no reason for this Court to grant Facebook's request for expedited discovery so that it may go on a fishing expedition in hopes of finding information that it

---

[10] It would be improper for Facebook to attempt to make such a showing for the first time in its reply, and the Court should decline to consider any such argument.  *See Southern California Stroke Rehabilitation Associates, Inc. v. Nautilus, Inc.*, 782 F.Supp.2d 1096, 1113 (S.D. Cal. 2011) ("Because Defendant raised this argument for the first time in its reply, it is improper, and the Court declines to consider it.").

[11] Facebook makes much of the fact that Sambreel's counsel would not specify which discovery it would respond to in discussions prior to the filing of Facebook's *ex parte* application.  *See* Doc. No. 10-1 at 9.  But Facebook refused to explain its rationale for any of its discovery requests, presumably because it knows its requested discovery is not necessary at this point.  Facebook cannot abdicate its duty of crafting properly tailored discovery requests and then complain that Sambreel's counsel should have done this work for Facebook.

1   can use to provide an *ex post* justification for its actions.

2          Moreover, Facebook has known about the dispute for some time and has had considerable

3   opportunity to investigate the facts.  Facebook has been interacting with Sambreel – with the assistance

4   of counsel – since October 2010.  The correspondence from Facebook indicates that it has been

5   investigating Sambreel's product during that time period.   And Facebook's *ex parte* application

6   demonstrates as much, as Facebook spends considerable effort disparaging Sambreel's products and

7   business model.  Presumably, Facebook is not asserting that it undertook its course of anticompetitive

8   conduct without first conducting a thorough investigation.  Thus, Facebook should be equally prepared as

9   Sambreel to move forward with a preliminary injunction hearing now.[12]

10                 **4.      Facebook's Requested Discovery Would Impose An Unprecedented Burden.**

11          Even if Facebook could show some marginal need for the discovery, it cannot demonstrate good

12   cause because the requests are exceedingly broad and will impose a significant burden on Sambreel.

13   Incredibly, Facebook asserts that its requests are "narrowly tailored."  Doc. No. 10-1 at 9.  This assertion

14   is false.  Facebook's requests would require *months* of time and effort in which to respond.  Specifically,

15   Facebook asks for production of 15 categories of documents, including, for example:  (1) documents

16   related to the development, marketing, strategic plans, functionality, architecture, design, operation,

17   implementation, specifications, changes, improvements, modifications, proposed improvements, and

18   proposed or actual new features of any Sambreel product or business unit "designed, created or marketed

19   for use by Facebook users or for use in conjunction with Facebook"  (Doc. Reqs. 1-3); (2) documents

20   related to the technical, advertising, ad creatives, sales, marketing, customer or user presentation made to

21   or by Sambreel regarding such products (Doc. Req. 4); (3) *all* communications with advertisers (Doc.

22   Req. 5); (4) *all* data received by Sambreel from users using such products (Doc. Req. 10); (5) documents

23   related to any attempt to overcome barriers to posting www.pagerage.com (Doc. Req. 11); (6) *all*

24

25   _____
     [12]  Facebook suggests that it is entitled to discovery because Sambreel spent the last eight months
26   "assembl[ing] a 'case' against Facebook."  Doc. No. 10-1 at 2.  This argument is specious.  Sambreel
     prepared its motion for preliminary injunction based purely upon its internal information and the
27   interactions between the parties – and without the aid of any discovery.  To the extent that this constitutes
     assembling a "case" against Facebook, Facebook unquestionably has been assembling its "case" against
28   Sambreel – as evidenced by the content of its *ex parte* application.

communications between Sambreel and any "past, current or prospective" users of its product (Doc. Req. 12); (7) documents "to, from, copying, or concerning" six Sambreel employees relating to Facebook, any Sambreel product that relates in any way to Facebook, or advertising on those products (Doc. Req. 13); (8) *all* communications between Sambreel and Facebook (Doc. Req. 14).[13]   Facebook also seeks to propound interrogatories that require it to identify "all facts, witnesses, and documents relating to" the allegations contained in the Complaint and identify "all documents and things concerning" the allegations and claims in the Complaint and Motion for Preliminary Injunction papers.  And Facebook requests that Sambreel produce *all* documents identified in responding to the interrogatories.  Finally, Facebook seeks to take free-ranging depositions of four identified individuals.

As these examples demonstrate, Facebook's requests are not "narrowly tailored."  To properly respond to these requests, Sambreel would be required to collect, review, and produce the vast majority of the documents – hardcopy and electronic – that are in its possession.  This collection would be necessary to respond to the document requests and/or the interrogatories.  And Sambreel would need to spend time preparing the witnesses for depositions.

Facebook's discovery requests are significantly more extensive and burdensome than discovery courts have consistently rejected prior to resolving a preliminary injunction.  *See, e.g., Hansen Beverage Co.*, 2008 WL 3992353, at *2 (rejecting document requests on two topics because they would require an extensive search of electronically stored information); *Apple, Inc.*, 2011 WL 1938154, at *3-*4 (denying the request for a Rule 30(b)(6) deposition and request for production of documents on the grounds that they would be overly burdensome); *cf. Semitool*, 208 F.R.D. at 277 (noting that the plaintiff was not seeking "a free ranging deposition" as a factor supporting allowing the discovery).  In light of this case law, it is no wonder that Facebook wants the Court to grant its request for discovery without considering the particular requests.  Facebook's request for discovery should be denied.

---

[13] Facebook suggests that certain of these requests are not burdensome because they are prefaced with the phrase "documents sufficient to show."  *See* Doc. No. 10-1 at 10.  This argument is without merit.  A request for "documents sufficient to show" *all* documents will require Sambreel collect and review *all* documents.

5.    **Facebook's Timeline Is Unreasonable, Further Prejudicing Sambreel.**

Facebook's proposal will also lead to considerable prejudice to Sambreel because the proposed schedule for discovery is unreasonable.  Facebook suggests that Sambreel should be required to respond to its discovery requests, including substantially completing the production of responsive documents by May 1, 2012.  That deadline is impossible in light of the scope of Facebook's requests.

To respond to Facebook's document requests and interrogatories, Sambreel would be required to conduct a complete collection of all of its documents – hardcopy and electronic – that relate to a broad range of topics, including, without limitation:  PageRage, CauseLayouts, a number of other Sambreel products, Facebook, its advertising plans, its interaction with advertising partners, its interactions with its users (and prospective users), and its finances.  Sambreel would also likely need to collect all e-mail communications and other electronically stored information in the possession of a large number of its employees (including at the very least the six identified in Facebook's document requests).  Sambreel's document collection will be complicated by the fact that it was forced to lay off 124 employees or contractors as a result of Facebook's actions (and has continued to lose important employees through attrition as a result of Facebook's actions).  Sambreel will need to search through now dormant computers and e-mail accounts without the aid of the employees who used them to find potentially responsive documents.  Contrary to Facebook's assertion that Sambreel should have "no difficulty" responding to Facebook's requests within the time period, Facebook's timeline is unworkable.[14]

Sambreel believes that responding to Facebook's proposed discovery will require many months.  The document production alone would likely require four months or more to complete.  Compressing the timeline is not possible.  Thus, while Facebook's motion asks – on its face – for a two month delay in the hearing on the motion for preliminary injunction, it is actually requesting a delay that could easily last six months.  All the while, Sambreel will continue to suffer ongoing irreparable harm as a result of

---

[14] As with its assertion that it is gating only an "immaterial" number of users, it is easy for Facebook to suggest that Sambreel should have "no difficulty" responding to these requests within the time limits it proposes because Facebook will not be the party that is required to respond.  Sambreel suspects that Facebook will not be so confident that a party should have "no difficulty" producing all responsive documents in a month when the parties enter merits discovery and Sambreel propounds document requests on Facebook.

-13-

1  Facebook's actions.

2      **6.      Any Hardship Faced By Facebook Is Of Its Own Making.**

3          Facebook suggests that Sambreel has been obstructionist with respect to Facebook's request for

4  expedited discovery.  Nothing could be further from the truth.[15]  On March 26, Facebook suggested to

5  Sambreel that the parties should delay the preliminary injunction hearing so that they could conduct

6  expedited discovery.  Sambreel responded the same day by suggesting that it would agree to the delay

7  and to discovery if Facebook would agree to a stipulated interim order that tracked the relief requested in

8  the preliminary injunction.  *See* Doc. No. 10-3 at 4-5 (E-Mail from D. Kotchen to J. Basile).  Facebook

9  refused this offer suggesting that it was a "counterproductive demand."  *See id.* at 4 (E-Mail from J.

10  Basile to D. Kotchen).  Sambreel followed up by explaining that its concern was that a delay would lead

11  to continued irreparable harm and that it needed to address this concern to agree to discovery and an

12  extension.  *See id.* at 3 (E-Mail from D. Kotchen to J. Basile).  Facebook again rebuffed the offer.  *See id.*

13  at 2 (E-Mail from J. Basile to D. Kotchen).  Facebook continues to attack the suggestion as wholly

14  inappropriate.  *See* Doc. No. 10-1 at 2.

15          The approach suggested by Sambreel has been adopted by a number of courts as a means to

16  protect the rights of the plaintiff while allowing for a postponement in a hearing on a motion for

17  preliminary judgment.  *See, e.g., Inverness Corp. v. Whitehall Labs*, 819 F.2d 48, 51 (2d Cir. 1987)

18  (concluding that where a judge refused to postpone a preliminary injunction hearing unless a defendant

19  agreed to the entry of a temporary restraining order, the judge "acted within his discretion in refusing to

20  postpone the preliminary injunction hearing without protecting Inverness's interests in the interim");

21  *Chevron Corp. v. Donzinger*, 768 F. Supp. 2d 581, 652-53 (S.D.N.Y. 2011) (noting that the defendant's

22  refusal to agree to an extension of a temporary restraining order justified the refusal to postpone a hearing

23

---

24  [15] Sambreel's good faith is demonstrated by the fact that it chose not to file an *ex parte* application for a

25  temporary restraining order, which would have been decided immediately and would have likely forced a
   preliminary injunction hearing in less than four weeks.  *Cf. Granny Goose Food Inc. v. Brotherhood of*

26  *Teamsters & Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 441 (1974) (noting that
   where a temporary restraining order has been entered, a hearing on a preliminary injunction should occur

27  prior to the expiration of the restraining order).  Sambreel instead chose to opt for a motion for
   preliminary injunction, which would provide Facebook with an opportunity to file a response prior to any

28  decision by the Court.

on a preliminary injunction) *reversed on other grounds by* 667 F.3d 232 (2d Cir. 2012).

Sambreel offered Facebook a reasonable compromise – the entry of an enforceable interim order that would protect its rights while allowing Facebook the flexibility it sought. Sambreel made this offer in spite of its steadfast belief that there is no need for expedited discovery or an extension of the deadlines in this case as a means to accommodate Facebook. Facebook rejected this compromise, so it should not now be heard to complain that the schedule is too aggressive.

**B.    There Is No Reason To Expedite Briefing On The Motion To Dismiss.**

Facebook's request for an expedited briefing schedule on its as-of-yet unfiled motion to dismiss and related request to extend the preliminary injunction hearing until after that motion is decided is similarly without basis. As a general matter, Facebook must demonstrate good cause for an expedited briefing schedule. It has not done so.

Facebook's only argument in favor of an expedited briefing schedule is to allow the motion to dismiss to be decided before the motion for preliminary injunction. This does not provide a valid basis for delay. Courts routinely consider motions for preliminary injunction before or alongside motions to dismiss. *See, e.g., DaSilva v. Wells Fargo Bank, N.A.*, 3:10-cv-00381-RCJ-VPC, 2010 WL 4258528, at *1 (D. Nev. Oct. 20, 2010) (deciding motion for preliminary injunction and deferring decision on motion to dismiss)[16]; *Singh v. Ilchert*, 784 F. Supp. 759, 762 (N.D. Cal. 1992) (noting that court had previously denied motion for preliminary injunction and deferred ruling on cross-motions to dismiss); *Gomez v. Wells Fargo Bank, N.A.*, No. 11-cv-2251, 2012 WL 642767, at *1 (S.D. Cal. Feb. 28, 2012) (deciding preliminary injunction and defendants motion to dismiss federal claims simultaneously while deferring judgment on motion to dismiss state law claims); *Certified Gasoline Co. v. Dept. of Energy*, No. C-2-81-379, 1981 WL 1280, at *4 (S.D. Ohio Apr. 20, 1981) ("The Court will defer ruling on the defendants' motions to dismiss and proceed directly to the question of whether a preliminary injunction should issue."); *Massachusetts Municipal Wholesale Electric Co. v. Washington Electric Cooperative, Inc.*, No. 88-0065-F, 1988 WL 39943, at *2 (D. Mass. Apr. 29, 1988) (considering motion for preliminary

---

[16] *See also DaSilva v. Wells Fargo Bank, N.A.*, No. 3:10-cv-00381-RCJ-VPC, 2010 WL 3910139, at *1 (D. Nev. Oct. 1, 2010) (granting motion for temporary restraining order and deferring both preliminary injunction and motion to dismiss).

injunction and motion to dismiss simultaneously); *Natural Resources Defense Council, Inc. v. Winter*, 645 F. Supp. 2d 841, 845 (C.D. Cal. 2007) (considering motion for preliminary injunction and motion to dismiss simultaneously); *Deer Valley Resort Co., LP v. Christy Sports, LLC*, No. 2:07-CV-00904DAK, 2007 WL 4570664, *1 (D. Utah Dec. 21, 2007) (considering motion to dismiss and motion for preliminary injunction simultaneously).

Facebook attempts to demonstrate the need for the expedited schedule by pointing to three courts that deferred deciding a motion for preliminary injunction until after the court decided a motion to dismiss. *See* Doc. No. 10-1 at 12. These cases do not help Facebook's cause. In *Maxwell Technologies, Inc. v. Nesscap, Inc.*, the court stayed a motion for preliminary injunction until it could decide whether it had personal jurisdiction over one of the defendants and whether that defendant had been properly served with process. *See* No. 06-cv-2311-JAH (Nov. 15, 2006 Order) (attached as Ex. 4 to the Declaration of R. Klinck). This decision makes good sense because the motion to dismiss raised an issue that could not be used to oppose the motion for preliminary injunction, and deciding the motion for preliminary injunction first would effectively deny the party the right to challenge personal jurisdiction.

*Douglas v. Dry Creek Rancheria Band of Pomo Indian* provides even less support. In that case, the plaintiff filed a motion for temporary restraining order and preliminary injunction almost two months *after* the motion to dismiss had been fully briefed before the magistrate judge. *See* Docket Sheet (attached as Ex. 5 to the Declaration of R. Klinck), Dkt. No. 38 (reply brief in support of motion to dismiss filed on September 5, 2008); *id.* Dkt. No. 42 (motion for temporary restraining order and preliminary injunction filed October 30, 2008). Four days later, the magistrate issued a Report and Recommendation granting the motion to dismiss. *See id.* Dkt. No. 44. Two days after that (less than one week after the TRO motion was filed), the Court denied the motion for temporary restraining order, finding that there was no showing of irreparable harm, and stayed any briefing in light of the Report and Recommendation granting the motion to dismiss. *See Douglass v. Dry Creek Rancheria Band of Pomo Indians,* No. CV08-159-S-EJL (Nov. 5, 2008 Order) (attached as Ex. 6 to the Declaration of R. Klinck). That case clearly does not support Facebook's suggestion that Sambreel's preliminary injunction motion, which has been pending for two weeks and is set for a hearing in three weeks, should be stayed pending

1   resolution of an as-of-yet unfiled motion to dismiss.[17]

2   The distinctions drawn by these cases make good sense.  Courts generally proceed with motions

3   for preliminary injunction without deferring to a motion to dismiss.  When both a preliminary injunction

4   motion and a motion to dismiss are ready for consideration simultaneously, courts consider them both.

5   Courts have considered motions to dismiss prior to motions for preliminary injunction, on the other hand,

6   where they are fully briefed and ready for decision well before the preliminary injunction or where a

7   defendant files a motion to dismiss that challenges a jurisdictional issue that would not be relevant in the

8   preliminary injunction hearing.

9   In a case such as this one, there is no reason to postpone the preliminary injunction to decide the

10   motion to dismiss.  In responding to Sambreel's motion for preliminary injunction, Facebook is free to

11   challenge the merits of Sambreel's claims.  Facebook foreshadows two arguments that it contends will be

12   in its motion to dismiss:  (1) that Sambreel's antitrust theory is faulty as a matter of law because

13   Sambreel is attempting to unilaterally set the terms on which it will do business and (2) that Sambreel has

14   not alleged or suffered an antitrust injury.  *See* Doc. No. 10-1 at 12-13.  While Sambreel believes these

15   arguments are frivolous, Facebook is free to make them in its opposition to the motion for preliminary

16   injunction.  In fact, Facebook can oppose the motion for preliminary injunction based upon any

17   substantive challenge that it would make to Sambreel's legal theory.  And this Court's resolution of these

18   arguments in the context of the motion for preliminary injunction could simplify the motion to dismiss

19   briefing (*e.g.*, if this Court rejects either party's argument as a matter of law).[18]

20   Thus, there is no reason to delay the proceedings on the preliminary injunction – which is already

21   partially briefed – in favor of an expedited proceeding on an as-of-yet unfiled motion to dismiss.  If

22

23   [17] The decision in *Table Bluff Reservation (Wiyot Tribe) v. Phillip Morris, Inc.,* No. C-99-2621, 1999
WL 33295030 (N.D. Cal. Nov. 12, 1999) is also unhelpful to Facebook.  In that case the court concluded
24   that the plaintiffs lacked constitutional standing to make their claims and that any claims that could arise
were not ripe because the actions that might cause harm would not occur for nearly a year.  *See id.* at *5
25   fn. 9 & *7.

26   [18] While Facebook cannot oppose the motion for preliminary injunction based upon deficiencies in the
complaint that could be cured by an amended pleading, there is no reason to delay a motion for
27   preliminary injunction based upon such an argument in any event.  Delaying decision on the motion for
preliminary injunction based upon an easily curable pleading deficiency would serve no purpose other
28   than delay.

PLAINTIFFS' OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION

1   anything, the better course would be to expedite the motion for preliminary injunction and defer deciding

2   (and potentially defer filing of) the motion to dismiss until after the preliminary injunction is decided.

3   **IV.      CONCLUSION**

4          For the reasons set forth herein, this Court should deny Facebook's request for expedited

5   discovery, should deny Facebook's request for an expedited scheduling for its as-of-yet unfiled motion to

6   dismiss, and should deny Facebook's request to delay the hearing on the motion for preliminary

7   injunction.

8

9   Dated:  April 2, 2012                              LAW OFFICE OF GREGORY P. OLSON

10                                                     By:  s/  Gregory P. Olson
11                                                          Attorney for Plaintiffs
                                                           E-mail: greg@olsonesq.com
12
                                                       and
13
                                                       KOTCHEN & LOW LLP
14                                                          DANIEL KOTCHEN
                                                           DANIEL LOW
15                                                          ROBERT KLINCK

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of:  (1) PLAINTIFFS' OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY; (2) DECLARATION OF ROBERT KLINCK IN OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY; (3) EXHIBITS 1 THROUGH 6 TO THE DECLARATION OF ROBERT KLINCK; and (4) DECLARATION OF ARIE TROUW IN OPPOSITION TO FACEBOOK'S *EX PARTE* APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY via the CM/ECF system on April 2, 2012.


Dated:  April 2, 2012                              By:  s/  Gregory P. Olson
                                                                    Attorney for Plaintiffs
                                                                    E-mail: greg@olsonesq.com