1  James F. Basile (SBN 228965)
   james.basile@kirkland.com
2  Elizabeth L. Deeley (SBN 230798)
   elizabeth.deeley@kirkland.com
3  KIRKLAND & ELLIS LLP
   555 California Street
4  San Francisco, California  94104
   Telephone: (415) 439-1400
5  Facsimile: (415) 439-1500

6

7  Susan Marie Davies (*Pro Hac Vice Application Forthcoming*)
   susan.davies@kirkland.com
8  Ian R. Conner (*Pro Hac Vice Application Forthcoming*)
   ian.conner@kirkland.com
9  KIRKLAND & ELLIS LLP
   655 Fifteenth Street, N.W.
10 Washington, D.C.  20005
   Telephone: (202) 879-5000
11 Facsimile: (202) 879-5200

12 Attorneys for Defendant
   FACEBOOK, INC.

13

14                    **UNITED STATES DISTRICT COURT**

15                 **SOUTHERN DISTRICT OF CALIFORNIA**

16

17 SAMBREEL HOLDINGS LLC; YONTOO LLC;        CASE NO. 12-CV-00668-CAB-KSC
   and THEME YOUR WORLD LLC,
                                             **REPLY IN SUPPORT OF DEFENDANT**
18              Plaintiffs,                  **FACEBOOK, INC.'S *EX PARTE***
                                             **APPLICATION FOR AN EXPEDITED**
19        vs.                                **RULE 16 SCHEDULING**
                                             **CONFERENCE AND AN ORDER FOR**
20 FACEBOOK, INC.,                           **EXPEDITED BRIEFING AND**
                                             **DISCOVERY**
21              Defendant.
                                             Judge:     Magistrate Karen S. Crawford
22

23

24

25

26

27

28

REPLY IN SUPPORT OF                          CASE NO: 12-CV-00668-CAB-KSC
*EX PARTE* APPLICATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ....................................................................................................2

I.     A FEW EXTRA WEEKS FOR DISCOVERY IS REASONABLE AND FAIR,
       ESPECIALLY GIVEN SAMBREEL'S EIGHT-MONTH DELAY IN SEEKING
       ADJUDICATION ................................................................................2

II.    GOOD CAUSE EXISTS TO GRANT EXPEDITED DISCOVERY BEFORE A
       HEARING ON SAMBREEL'S EXTRAORDINARY REQUEST FOR A
       MANDATORY PRELIMINARY INJUNCTION .............................................3

III.   FACEBOOK'S REQUESTED DISCOVERY IS NARROWLY TAILORED..................5

       A.     Facebook's Proposed Document Requests and Interrogatories Are Narrowly
              Tailored ...............................................................................6

       B.     Deposing Sambreel's Declarants is Reasonable and Necessary to Challenge
              their Assertions .......................................................................8

IV.    RESOLVING THRESHOLD MOTION TO DISMISS ARGUMENTS IN
       ADVANCE OF THE PRELIMINARY INJUNCTION HEARING WILL SERVE
       THE INTERESTS OF JUDICIAL ECONOMY ..............................................9

CONCLUSION................................................................................................10

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Adidas Am., Inc. v. Herbalife Int'l, Inc.*,
   No. CV 09-661-MO, 2010 WL 680838 (D. Or. Feb. 22, 2010) ...................................................... 4

4

*AT & T Corp. v. Vision One Sec. Sys.*,
   914 F. Supp. 392 (S.D. Cal. 1995) ............................................................................................. 1, 4

5

*Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*,
   856 F. Supp. 524 (N.D. Cal. 1993) ................................................................................................ 4

6

7

*Chevron Corp. v. Donzinger*,
   768 F. Supp. 2d 581 (S.D.N.Y. 2011) ........................................................................................... 5

8

*DISH Network Corp. v. F.C.C.*,
   653 F.3d 771 (9th Cir. 2011) ......................................................................................................... 6

9

10

*In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*,
   No. MDL 2121, 2011 WL 6372826 (S.D. Cal. Dec. 19, 2011) ..................................................... 5

11

*Int'l Broth. of Teamsters v. N. Am. Airlines*,
   No. C05-0126 TEH, 2005 WL 947083 (N.D. Cal. Apr. 20, 2005) .............................................. 10

12

13

*Kremen v. Cohen*,
   No. 5:11-CV-05411-LHK, 2011 WL 6113198 (N.D. Cal. Dec. 7, 2011) .................................. 3, 8

14

*Quia Corp. v. Mattel, Inc.*,
   No. C10-01902 JF (HRL), 2010 WL 2179149 (N.D. Cal. May 27, 2010) .......................... 1, 4, 5, 8

15

16

*Sierra Club, Inc. v. U.S. Dept. of State*,
   No. C 09-04086 SI, 2009 WL 2929411 (N.D. Cal. Sept. 9, 2009) ............................................. 10

17

*Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*,
   No. C-99-2621 MHP, 1999 WL 33295030 (N.D. Cal. Nov. 12, 1999) ......................................... 9

18

19

**Other Authorities**

20

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 13-D at 13:157.2 ..................................................... 1

21

22

23

24

25

26

27

28

Sambreel seeks a mandatory injunction suspending Facebook's enforcement of its standard terms without permitting Facebook any discovery of any kind or any ability to test the assertions of Sambreel's declarants before a hearing on the motion. This is trial by ambush plain and simple.

In its Opposition, Sambreel disingenuously claims that the case law does not support defendants taking discovery in preliminary injunction cases. While telling the Court it could not locate a single case in which "a defendant [successfully] sought expedited discovery to respond to a preliminary injunction," Opp. at 2, Sambreel ignores a published decision in this very District. *See*, *AT & T Corp. v. Vision One Sec. Sys.*, 914 F. Supp. 392, 396-97 (S.D. Cal. 1995) (noting earlier grant of defendant's *ex parte* application for expedited discovery, including depositions and document requests, as "necessary to the Court's determination of the preliminary injunction motion"). While it is true that published decisions discussing the discovery rights of preliminary injunction ***defendants*** are relatively rare, there is a reason: Because rarer still is a plaintiff who opposes a defendant's requests for expedited preliminary injunction discovery. Unlike plaintiffs, who enjoy a pre-litigation period to assemble their arguments, defendants are under the clock to test plaintiffs' assertions and assemble their rebuttal. Indeed, practice guides encourage plaintiffs not to oppose expedited discovery because courts routinely grant it. *See* Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 13-D at 13:157.2 (advising plaintiffs that "***[i]f defendant asks for expedited discovery, consider accommodating that request.*** (***The court is likely to grant it anyway.***).")[1]

Ignoring that expedited preliminary injunction discovery is routine, and that a pending preliminary injunction motion is a compelling factor supporting "good cause," *see Quia Corp. v. Mattel, Inc.*, C10-01902 JF (HRL), 2010 WL 2179149, at *1 (N.D. Cal. May 27, 2010), Sambreel attempts to justify its bar to ***any*** pre-hearing testing of its assertions by referring repeatedly to its purported ongoing "irreparable harm." But in weighing the advisability of a few additional weeks for reasonable due process, this Court must look behind the mantra of "irreparable harm" to see what actually is going on in this case and whether what really is being sought is tactical advantage. Based on Sambreel's ***own admissions***, it is now clear that, of the two Facebook practices allegedly causing Sambreel irreparable harm, one ("gating") is now only occurring for "a small number of Sambreel

---

[1] All emphasis is supplied unless otherwise noted.

users," as compared to nearly 3,000,0000 users per day who were accessing Facebook when the complaint was filed, *see* Opp. at 1; Palow Decl. ¶ 5, and Sambreel has been aware of the other (an alleged group boycott) since at least "July or August" of 2011 and the purported "magnitude" of resulting loss "became clear" to Sambreel by at least "late 2011," Opp. at 5, n.5. In other words, Sambreel concedes that in one instance, the conduct allegedly causing the "irreparable harm" has been reduced to negligible instances, and in the other, Sambreel sat on its complaint for months.

Given this situation, before this Court considers a mandatory injunction that would alter Facebook's enforcement of standard terms for the duration of this litigation, basic tenets of due process should provide Facebook some opportunity for meaningful discovery, the testing of the declarants, and a two-day evidentiary hearing. That a plaintiff seeking a mandatory injunction seeks so strenuously to keep its entire case behind a veil until after the injunction hearing is notable and worth pausing on.

Expedited discovery and a reasonable scheduling adjustment are warranted because:

*First*, Facebook's right to a short period of limited discovery outweighs Sambreel's claim that ongoing irreparable harm makes discovery unwarranted, given Sambreel's delay in bringing its claims, the key alleged harm is not continuing, and money damages could compensate for all harm alleged should Sambreel prevail;

*Second*, courts regularly grant defendants discovery in preliminary injunction settings and that right is escalated where, as here, the extraordinary remedy of a mandatory injunction is sought;

*Third*, Facebook's discovery requests are narrowly tailored and Facebook is entitled to discovery of information relevant to the elements required for a preliminary injunction that is uniquely within Sambreel's control, including its own financial performance and harm, its records showing choice or confusion by Facebook users subjected to PageRage, and the security threats posed by PageRage to Facebook users; and

*Fourth*, an expedited briefing on a motion to dismiss is warranted because Sambreel has chosen an improper venue and does not have standing to assert its four lead antitrust claims.

## ARGUMENT

### I.   A FEW EXTRA WEEKS FOR DISCOVERY IS REASONABLE AND FAIR, ESPECIALLY GIVEN SAMBREEL'S EIGHT-MONTH DELAY IN SEEKING ADJUDICATION

Sambreel's Opposition undermines its claim that irreparable harm requires a bar to discovery and a workable schedule. While Sambreel claims that "[t]he single most pressing issue in this case at this juncture is to alleviate the irreparable harm Sambreel is suffering as a result of Facebook's

actions," Opp. at 7, it simultaneously concedes that it knew Facebook allegedly began contacting Sambreel's advertising partners in *July of last year*.  Opp. at 4.  Even more, Sambreel concedes that "the magnitude of [its] loss" caused by Facebook's purported "group boycott" activity *became clear in "late 2011."*  Opp. at 5, n.5.  Thus, Sambreel unabashedly cries that it cannot wait, while admitting that it did just that.  Similarly, while on the one hand painting for the Court a picture of desolation allegedly caused by "gating," Opp. at 1, Sambreel concedes that, even under its own reckoning, a "small number" were gated in March, *id*.  Yet, Facebook has not intentionally gated PageRage users since December and estimates that 3,000,000 PageRage users accessed facebook.com on the day Sambreel filed its complaint, more then were accessing in December of 2011, before gating began.  Palow Decl. ¶¶ 4-5.

The eight weeks between April 24 and mid-June, when Facebook proposes the Court hold a two-day evidentiary hearing, is *one-fourth* of the time Sambreel waited to file its complaint on March 19 after learning of Facebook's allegedly "start[ing] to threaten Sambreel's advertising partners," Opp at 5 n.5, and is *less than half* of the time Sambreel waited to file its complaint after learning of the "magnitude of the loss," *id*.  Were Sambreel's alleged irreparable harm so great that it could not allow for eight additional weeks for orderly due process, Sambreel would have moved for a preliminary injunction earlier or would have moved for a temporary restraining order.  It did neither.  Sambreel's apparently tactical delay in filing should not only doom its motion for an injunction in total, but also belies its argument that a few weeks for discovery is unwarranted.

Moreover, nowhere in its Opposition does Sambreel respond to Facebook's assertion that money damages would redress any alleged injury due to decreased advertising sales.  *See Ex Parte* App. at 10.  Thus, Sambreel's claims of irreparable harm do not warrant denying Facebook a few weeks of limited discovery.

## II.   GOOD CAUSE EXISTS TO GRANT EXPEDITED DISCOVERY BEFORE A HEARING ON SAMBREEL'S EXTRAORDINARY REQUEST FOR A MANDATORY PRELIMINARY INJUNCTION

Sambreel's Opposition obfuscates the good cause standard.  The "good cause" standard for expedited discovery is one of reasonableness.  *Kremen v. Cohen*, No. 5:11-CV-05411-LHK, 2011 WL 6113198, at *9 (N.D. Cal. Dec. 7, 2011) ("[I]n deciding whether to grant a request for expedited

discovery in connection with a preliminary injunction hearing, the Court examines the reasonableness of the request in the light of all the surrounding circumstances."). A pending preliminary injunction motion is itself a compelling factor in the good cause analysis. *See Quia Corp.*, 2010 WL 2179149, at *1. Here, that factor is coupled with the Sambreel's extraordinary request for a mandatory injunction, which more than warrants quick and focused discovery.

The case law does not support Sambreel's assertion that defendants are not entitled to discovery to defend a preliminary injunction motion. Opp. at 9; *see, e.g.*, *Quia Corp.*, 2010 WL 2179149, at *2 (granting defendants expedited discovery including depositions and document requests); *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, No. CV 09-661-MO, 2010 WL 680838, at *2 (D. Or. Feb. 22, 2010) (granting defendant expedited discovery and requiring plaintiff to produce certain information through special interrogatories, deposition, or production of documents); *AT & T Corp.*, 914 F. Supp. at 396-97 (noting earlier grant of defendant's *ex parte* application for expedited discovery, including depositions and document requests, as "necessary to the Court's determination of the preliminary injunction motion").

Absent discovery, Facebook cannot test a significant number of Sambreel's preliminary injunction allegations on topics wholly within Sambreel's control. For example, Sambreel has made untested allegations as to (a) its business model; (b) how PageRage operates; (c) its claim that PageRage no longer mines Facebook users' data or interferes with Facebook's functionality; (d) its hearsay conversations with third party "advertising partners" who were allegedly "threatened" by Facebook; and (e) its financial condition surrounding its "irreparable harm." To the extent Sambreel has any support for its claims, that information resides with Sambreel. Discovery is thus critical for Facebook at this early stage to lodge a defense to Sambreel's one-sided allegations.

Moreover, Sambreel's requested relief is extraordinary. Half of the relief Sambreel seeks is in the form of a ***mandatory*** injunction that would force Facebook to throw out its own terms and policies. *See Bell Atl. Bus. Sys. Servs., Inc. v. Hitachi Data Sys. Corp.*, 856 F. Supp. 524, 525 (N.D. Cal. 1993) (noting the difference between an injunction simply to "maintain the status quo" and the "extraordinary relief in the form of a mandatory injunction" that "drastically alter[s] the status quo"). Sambreel seeks an order that prevents Facebook from enforcing large portions of its advertising and

1  platform development policies.  Pls. Not. of Prelim. Inj. Mot. at 1.  Sambreel asks this Court to enter

2  such an injunction without letting Facebook probe *any* of its allegations through discovery.[2]

3  **III.    FACEBOOK'S REQUESTED DISCOVERY IS NARROWLY TAILORED**

4          In its Opposition, Sambreel argues that Facebook's discovery requests are overly broad and

5  burdensome.  That assertion is false.  *First*, Facebook has limited the vast majority of its document

6  requests to "documents sufficient to show," rather than asking for *all* documents.  Indeed, on its own

7  initiative, a court used the same wording to narrow requests specifically in the preliminary injunction

8  context.  *See Quia Corp.*, 2010 WL 2179149, at *2.  *Second*, Sambreel's unsupported assertions of

9  burden are substantially overstated.  Its argument that it would have to collect and review *all*

10  documents despite the bulk of Facebook's requests being limited to "documents sufficient to show,"

11  Opp. at 12, n.13, ignores that targeted keyword searching is a recognized way to reduce discovery

12  burdens.  *See In re Nat'l Ass'n of Music Merchants, Musical Instruments & Equip. Antitrust Litig.*,

13  No. MDL 2121, 2011 WL 6372826, at *3 (S.D. Cal. Dec. 19, 2011) (acknowledging that "key word

14  searching is a recognized method to winnow relevant documents from large repositories") (citations

15  and quotations omitted).  Tellingly, Sambreel makes no attempt to meaningfully quantify its alleged

16  burden and offers no declaration to support its conclusory lawyer arguments on the purported extent

17  of its burden.  *Third*, contrary to Sambreel's assertions, Opp. at 10, Facebook provided Sambreel

18  and the Court its proposed discovery requests and explained how the requests are tailored to probe

19  one or more of the four preliminary injunction elements.  *See Ex Parte* App. at 9-10.   Even a

20  cursory review of those discovery requests reveals that they are aimed at issues central to Sambreel's

21  preliminary injunction motion.

22          Remarkably, Sambreel claims that no discovery is necessary because "Facebook clearly

23  already knows why it decided to engage in the conduct that Sambreel is challenging and it has ample

24

25  [2] Sambreel tries to prove its reasonableness by highlighting its Hobson's choice to Facebook: agree to an interim injunction that tracks Sambreel's injunction request or receive no discovery.  Opp. at 14; Basile Decl. ¶ 5, Ex. A.  It then strains to cite cases validating its proposal, citing a 1987 out-of-Circuit case and a New York case where the court offered to postpone a preliminary injunction hearing if the defendant agreed to maintain the status quo (*not* agree to a mandatory injunction, like Sambreel proposed).  Opp. at 14; *Chevron Corp. v. Donziger*, 768 F. Supp. 2d 581, 652-53 (S.D.N.Y. 2011) *reversed on appeal by* 667 F.3d 232 (2nd Cir. 2012).

26

27

28

information to respond to Sambreel's motion."  Opp. at 10.  Sambreel's one-sided view of discovery ignores that much of the support (or lack thereof) for its preliminary injunction exists solely within Sambreel's possession, custody or control, not Facebook's.

### A.     Facebook's Proposed Document Requests and Interrogatories Are Narrowly Tailored

The elements for analyzing a preliminary injunction are (a) likelihood of success on the merits; (b) the balance of equities; (c) the public interest; and (d) irreparable harm.  *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776 (9th Cir. 2011).  Facebook's proposed document requests, interrogatories, and depositions are critical to testing Sambreel's allegations as to each of those elements.

**Likelihood of Success**.  To succeed on a preliminary injunction, Sambreel must demonstrate that it is likely to succeed on the merits of its claims.  *See DISH Network Corp.,* 653 F.3d at 776.  The success or failure of Sambreel's antitrust and state law claims rests on, among other things, untested allegations as to Sambreel's role and actions in the alleged relevant market, alleged "discriminatory pricing disadvantages for Sambreel," and "the demand for advertising on PageRage[.]"  Prelim. Inj. Mot. at 12-13.  The support (if any) behind each of them are within Sambreel's possession.  Facebook's proposed document requests 5, 6, 13, 14, and 15, and interrogatories 4, 6, 7, 8, 9, 10, and 11 require Sambreel to disclose the support for its allegations.

Moreover, to determine the likelihood of success on the merits, this Court needs a reasonable understanding of how PageRage injects itself and its obtrusive advertisements into facebook.com, the net effect of which is to distort and burden the Facebook user experience, increase security threats, and interfere with the functionality of facebook.com.  Sambreel, as the operator of the PageRage plug-in, *see* Prelim. Inj. Mot. at 5, knows how its plug-in operates, has internal information on its impact on the security of users, and how its software interferes with the Facebook experience.  Document requests 2, 3, 4, 10, 11, 12, and 15, and interrogatories 1, 5, 9, 10, and 11 are tailored to reveal a full and fair picture of PageRage's functionality for the Court.

**Balance of Equities**.  Sambreel asserts that PageRage is safe and "does not mine data from a user's Facebook page."  *See* Prelim. Inj. Mot., Trouw Decl. ¶¶ 33-34.  Facebook is seeking discovery

1    to test those assertions now, before the court considers granting a mandatory injunction that would

2    allow plaintiffs to continue their conduct unchecked, and potentially expose Facebook users to

3    security risks throughout the full course of this litigation.  Facebook's proposed document requests

4    1, 2, 3, 10, and 11, and its interrogatories 9, 10, and 11 seek highly relevant information.

5         Sambreel also baldly asserts that it has addressed a number of Facebook's concerns with

6    PageRage related to consumer confusion and the displacement of Facebook's own content.  Prelim.

7    Inj. Mot. at 23.  Facebook actively polices its website and content to protect its users' security and to

8    maintain control of the Facebook user experience.  On multiple occasions, Sambreel has interfered

9    with Facebook's efforts to police its website, including making repeated changes to PageRage's

10   software code in an effort to avoid Facebook's detection of its adware plug-in.  Information

11   concerning Sambreel's changes to PageRage in response to Facebook's efforts to protect its website

12   and its users is of critical importance to the balance of the equities and the public interest inquiry.

13   This information is solely within Sambreel's control, and without discovery, Facebook will be

14   unable to learn the scope of Sambreel's efforts to circumvent Facebook's technological barriers and

15   mitigation efforts.  Facebook's proposed document requests 3 and 11 and interrogatories 9, 10, and

16   11 are necessary to obtain this information.

17        Sambreel also claims that it does not market PageRage to advertisers as a way to circumvent

18   Facebook's Advertising Guidelines.  Prelim. Inj. Mot. at 23.  Facebook proposes document requests

19   4 and 5 and interrogatories 9, 10, and 11 to test Sambreel's assertions concerning its marketing

20   practices.

21        **Public Interest**.  Sambreel asserts that Facebook's alleged conduct "will reduce competition

22   and will reduce consumer choice," Prelim. Inj. Mot. at 24-25, and "PageRage provides functionality

23   that its users view as beneficial," Compl. ¶ 45.  It also asserts that the public interest will be served

24   by an issuance of an injunction because "the public interest supports allowing PageRage to connect

25   with users who want it."  Prelim. Inj. Mot. at 24-25.

26        Facebook is entitled to obtain discovery on these highly disputed issues so that it can

27   establish whether (1) Sambreel customers download and install PageRage unknowingly as a result of

28   deceptive and misleading marketing by Sambreel and its affiliates; (2) Sambreel customers complain

about the PageRage product and do not want it installed on their computers; and (3) Sambreel customers believe that PageRage interferes with their Facebook user experience. Discovery is especially appropriate here because the information necessary to evaluate this disputed issue is largely, if not almost exclusively, within Sambreel's control. Facebook's proposed document requests 7, 8, 9, 12, 13, and 15, and interrogatories 9, 10, and 11, request information directly relevant to this key contested issue.

**Irreparable Harm**. Sambreel contends that it will suffer irreparable harm without a preliminary injunction. For example, it alleges that PageRage "is operating at a significant loss," and that Sambreel is "currently in default of its major line of credit with Wells Fargo," "has terminated 124 of its 220 employees and contractors, significantly reduced its spending on marketing, and shelved a number of new products that were in development," and that without PageRage, it "has been unable to grow and obtain new customers." Prelim. Inj. Mot. at 20-22. If Sambreel had its way, each of these allegations—the veracity of which are within Sambreel's sole control—would simply go uncontested. The discovery Facebook proposes is critical to test these foundational allegations of Sambreel's irreparable harm argument. To that end, Facebook proposes document request numbers 5, 6, 7, 8, 12, 13, and 15 and interrogatories 2, 3, 4, 5, 9, 10, and 11. Each of these proposed requests is narrowly tailored to probe whether Sambreel has been harmed and the extent to which, if at all, Sambreel might continue to be harmed.

**B.    Deposing Sambreel's Declarants is Reasonable and Necessary to Challenge their Assertions**

Sambreel refuses to let Facebook depose a single one of its declarants. Yet, in its Opposition, Sambreel barely attempts to justify its refusal, arguing that it "would need to spend time preparing the witnesses for depositions." Opp. at 12. Facebook is entitled to explore the unsupported assertions in Sambreel's declarations. *See Quia Corp.*, 2010 WL 2179149, at *2 (granting defendant's request to depose two witnesses about the declarations they submitted in support of plaintiff's preliminary injunction motion); *Kremen v. Cohen*, No. 5:11-CV-05411-LHK, 2011 WL 6113198, at *10 (N.D. Cal. Dec. 7, 2011) (granting **plaintiff's** request for depositions,

1    including a 30(b)(6) deposition, on just 72 hours written notice).  Likewise, Facebook seeks to

2    depose Sambreel's declarants and take a Rule 30(b)(6) deposition of Sambreel.

3            Facebook's need to depose Sambreel's declarants is particularly compelling given the scope

4    of issues raised in their declarations.  Through its declarations, Sambreel offers evidence on a wide

5    range of issues that are critical to this litigation, including, for example, how PageRage is designed

6    and functions, Trouw Decl. ¶ 8, its business model, Trouw Decl. ¶¶ 9-16, the alleged changes it

7    made to PageRage to limit its confusion to users, Trouw Decl. ¶¶ 18-20, its claim that PageRage no

8    longer mines Facebook users' data or interferes with Facebook's functionality, Trouw Decl. ¶ 34,

9    how it advertises PageRage, Trouw Decl. ¶¶ 13, 35, its alleged conversations with advertising

10   partners concerning Facebook's alleged "threats," Levin Decl. ¶ 3; Miller Decl. ¶ 12, the extent of its

11   alleged loss of employees, users and advertisers, Trouw Decl. ¶¶ 37-42; Sullivan Decl. ¶¶ 3-4, and

12   its alleged irreparable harm, Trouw Decl. ¶¶ 43-44; Miller Decl. ¶¶ 11-20.

13           The problem is that the veracity and details surrounding all or most of these issues are firmly

14   within Sambreel's control, and cannot be meaningfully tested without depositions.  Given

15   Sambreel's own eight-month delay, and the extraordinary mandatory injunction it seeks, Sambreel's

16   excuse that it "would need to spend time preparing the witnesses for depositions" is unavailing.

17   **IV.   RESOLVING THRESHOLD MOTION TO DISMISS ARGUMENTS IN ADVANCE
         OF THE PRELIMINARY INJUNCTION HEARING WILL SERVE THE
18       INTERESTS OF JUDICIAL ECONOMY**

19           Within the next twenty four hours, Facebook will file a motion to dismiss the complaint in its

20   entirety, which will raise threshold venue arguments based on Sambreel's agreement to litigate all

21   claims with Facebook elsewhere and standing arguments.  In response to Facebook's arguments

22   emphasizing the need for an expedited briefing schedule to resolve "fundamental legal issues," *Ex*

23   *Parte* App. at 11, Sambreel only argues that Facebook can assert its motion to dismiss arguments

24   with its preliminary injunction opposition.

25           Sambreel's argument ignores case law resolving threshold legal issues ***before*** adjudicating a

26   fact-intensive preliminary injunction.  *See Ex Parte* App. at 12 (citing *Table Bluff Reservation*

27   *(Wiyot Tribe) v. Philip Morris, Inc.*, No. C-99-2621 MHP, 1999 WL 33295030, at *1 (N.D. Cal.

28   Nov. 12, 1999) (granting defendants' motion to dismiss for lack of standing after having postponed

plaintiffs' preliminary injunction motion)); *see also Sierra Club, Inc. v. U.S. Dept. of State*, No. C 09-04086 SI, 2009 WL 2929411, at *1-2 (N.D. Cal. Sept. 9, 2009) (deferring consideration of preliminary injunction motion until ruling on defendant's motion to transfer venue); *Int'l Broth. of Teamsters v. N. Am. Airlines*, No. C05-0126 TEH, 2005 WL 947083, at *2 (N.D. Cal. Apr. 20, 2005) (noting that the court had found "good cause to stay consideration of [plaintiff's] motion for preliminary injunction until after it resolve[d] [defendant's] motion to dismiss or transfer venue"). A ruling on these threshold issues of standing and venue will likely moot Sambreel's preliminary injunction motion and will conserve judicial resources. The proposed briefing schedule in Facebook's opening brief serves those ends. *Ex Parte* App. at 11-12.

Sambreel's fundamental pleading deficiencies provide an equally compelling reason to adjudicate Facebook's motion to dismiss before Sambreel's preliminary injunction motion. Sambreel's pleading deficiencies extend to—and are fatal to—every count of the complaint. *See id.* at 12-13. Its pleading deficiencies also make it impossible for Facebook to understand with any precision the claims it must defend against in an injunction proceeding, and will hamstring the Court's ability to evaluate Sambreel's likelihood of success. An expedited briefing schedule will quickly resolve Sambreel's fundamental pleading deficiencies before the parties and the Court have to engage in fact-intensive preliminary injunction proceedings.

## **CONCLUSION**

For the reasons stated above and set forth in Facebook's opening memorandum, Facebook respectfully requests that the Court grant the relief request in its *Ex Parte* Application.


DATED:  April 3, 2012                       Respectfully submitted,
                                            KIRKLAND & ELLIS LLP


                                            s/ *James F. Basile*
                                            James F. Basile
                                            james.basile@kirkland.com
                                            Elizabeth L. Deeley
                                            elizabeth.deeley@kirkland.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2012, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANT FACEBOOK, INC.'S** *EX PARTE* **APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY and DECLARATION OF CHRIS PALOW IN SUPPORT OF FACEBOOK, INC.'S** *EX PARTE* **APPLICATION FOR AN EXPEDITED RULE 16 SCHEDULING CONFERENCE AND AN ORDER FOR EXPEDITED BRIEFING AND DISCOVERY** with the Clerk of the court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the Court's Electronic Mail Notice List.

DATED: April 3, 2012                                    By: *s/ James F. Basile*
                                                                            James F. Basile