# Appendix A

During its meet and confer sessions, Facebook narrowed its initial document requests to those listed in this appendix. Based on negotiation, Facebook and Sambreel agreed on the production of certain information detailed below and Facebook agreed not to further pursue a motion to compel on these specific requests at this point based on the responses and understandings below.

**Request for Production of Documents No. 1:** Documents sufficient to show communications from PageRage users expressing dissatisfaction or confusion concerning the PageRage plug-in and Plaintiffs' responses in whatever format PageRage keeps consumer complaints.

**Response to Request for Production No. 1:** Sambreel will produce all e-mails from the PageRage customer service e-mail address for Facebook's review.

**Facebook's Position on Request for Production No. 1:** Facebook is willing to forego a motion to compel a more complete response at this time based upon production of the aforementioned documents and on Sambreel's representation through its counsel that it does not keep a log of PageRage user complaints, that the customer service e-mail address account is the most likely source of readily available user complaints and that Plaintiffs will not rely upon any other documents regarding complaints by users in support of its motion for a preliminary injunction.

**Request for Production of Documents No. 2:** Plaintiffs' contracts with the seven advertising partners identified in Paragraph 3 of Mr. Sullivan's declaration in support of Plaintiffs' preliminary injunction motion (Rubicon Project, AdMeld, OpenX, Advertising.com,

LifeStreet, SayMedia, and Microsoft Media Network) and Neverblue concerning the placement of advertisements through PageRage.

**Response to Request for Production No. 2:** Sambreel will produce copies of contracts with these advertisers that relates to the placement of advertising through PageRage.

**Request for Production of Documents No. 3:** All communications with the seven advertising partners identified in Paragraph 3 of Mr. Sullivan's declaration in support of Plaintiffs' preliminary injunction motion (Rubicon Project, AdMeld, OpenX, Advertising.com, LifeStreet, SayMedia, and Microsoft Media Network) and Neverblue concerning (a) discussions with Facebook about the ad injection methods, including serving ads through PageRage, and (b) why each of the seven advertising providers stopped doing business with PageRage.

**Response to Request for Production No. 3:** Sambreel will search the files of Andrew Sullivan, who was in charge of the relationships with advertisers, for relevant correspondence. Sambreel will produce any relevant correspondence it locates. Sambreel believes that much of the interaction was done over the telephone.

**Facebook's Position on Request for Production No. 3:** Facebook is willing to forego a motion to compel a more complete response at this time based on production of relevant communications in Mr. Sullivan's files and based upon the understanding that Sambreel has no other specific information that it has not revealed upon which it bases its assertions regarding communications between Facebook and the advertisers.

**Request for Production of Documents No. 4:** Documents sufficient to show the number of PageRage users on a daily, weekly, or monthly basis since January 2009.

**Response to Request for Production No. 4:**  Sambreel will produce an Excel Spreadsheet that contains the number of daily active users of PageRage from the time period during which the data is available.

**Facebook's Position on Request for Production No. 4:**  Facebook is willing to forego a motion to compel a more complete response at this time based on Sambreel's representation through its counsel that it will produce PageRage usage rates as far back as Sambreel keeps such information.

**Request for Production of Documents No. 5:**  Documents sufficient to show each of the methods by which users obtain PageRage, e.g., visiting pagerage.com directly, downloading PageRage through bundled software (identifying the bundled software), affiliate advertising that directs users to pagerage.com, etc.) and the percentage of users that download PageRage through each of the identified methods.  (We would accept a list or interrogatory type of response to this if that is more convenient than collecting documents.)

**Response to Request for Production No. 5:**  Sambreel will produce a spreadsheet that shows the number of daily installs via four avenues:  (a) organic installs, (b) installs as a response to ad networks, (c) installs as a response to affiliate networks, and (d) installs that are part of a software bundle.

**Facebook's Position on Request for Production No. 5:**  Facebook is willing to forego a motion to compel a more complete response at this time based on Sambreel's representation through its counsel that it will produce the aforementioned spreadsheet listing all installs via the four avenues and upon his representation that these are the only four avenues of installation for PageRage.  Facebook also does so based on its understanding that Sambreel will not rely upon

any other information regarding avenues of installation in support of its motion for a preliminary injunction.

**Request for Production of Documents No. 6:** Documents sufficient to show user turnover rates on a daily, weekly, or monthly basis, which ever is most convenient, since January 2009, i.e., the rate at which PageRage users uninstalled or otherwise disabled the PageRage plug-in.  (We would accept a list or interrogatory type of response to this if that is more convenient than collecting documents.)

**Response to Request for Production No. 6:** Sambreel will produce data showing the total daily installs and the total daily uninstalls.  As discussed during a meet and confer call on April 16, 2012, Sambreel receives a notification that the product is uninstalled only in limited circumstances.  As such, the "uninstall" data does not include all users who disable PageRage and does not include any users who cease using PageRage as a result of changing computers or browsers.

**Facebook's Position on Request for Production No. 6:** Facebook is willing to forego a motion to compel a more complete response at this time based on production of the aforementioned information and upon Sambreel's counsel's representation that his understanding is that Sambreel does not maintain complete user turnover rates or rates based on the method by which the user installed PageRage.  Facebook also does so based on the understanding that Sambreel will not rely on any other documents or information regarding turnover rates or uninstalls by users in support of its motion for a preliminary injunction.

**Request for Production of Documents No. 7:** Documents sufficient to show the spectrum of PageRage's functionality since January 2009, which could take the form of marketing materials or internal management material that describes PageRage's functionality, including any functionality that is not identifiable from public-facing material. [Open to discussing further per your discussion with your client and we are checking with ours as well].

**Response to Request for Production No. 7:** Sambreel will not produce any documents regarding this topic. The functionality of PageRage is publicly available on PageRage's website and is well known to Facebook. Indeed, Facebook's letters to Sambreel indicate that Facebook has downloaded PageRage and is aware of PageRage's functionality. As discussed during a meet and confer telephone call on April 16, 2012, Sambreel does not intend to rely upon any unknown functionality of PageRage to support its motion for preliminary injunction.

**Facebook's Position on Request for Production No. 7:** Facebook is willing to forego a motion to compel at this time based on Sambreel's representation through its counsel that (a) PageRage's functionality can be determined through publicly available information and (b) Sambreel does not intend to rely upon non-public information about PageRage's functionality to support its motion for preliminary injunction.

**Request for Production of Documents No. 8:** Documents sufficient to show on a daily, weekly, or monthly basis, whichever is most convenient since January 2009, (a) the number of advertising impressions that PageRage and all other Sambreel products served, (b) the actual or average cost per 1000 impressions of the advertisements PageRage and all other Sambreel products served, (c) Sambreel's revenue from PageRage and (d) Sambreel's revenue for all of its other products. The documents should be sufficient to show the breakdown of each of the three

categories for PageRage as compared to all other Sambreel products.  (We would accept the spreadsheet you described as potentially responsive in our call today if it contains this information.)

**Response to Request for Production No. 8:**  Sambreel will produce an Excel Spreadsheet that provides the following information broken down between Sambreel as a whole and PageRage specifically on a daily basis:  (a) active users, (b) advertising impressions served, (c) the average realized CPM, and (d) revenue.  Data is available for the various categories starting on different dates, and the majority of the data categories are not available beginning in January 2009.  Sambreel will produce data that is accessible to it at this time.

**Facebook's Position of Request for Production No. 8:** Facebook will forego a motion to compel a more complete response at this time based upon the production of the aforementioned data and upon counsel's representation that the aforementioned data is all that Plaintiffs intend rely on regarding the matters referenced in Request for Production No. 8 in support of their motion for preliminary injunction.

**Request for Production of Documents No. 9:**  The "advertising policies" that Mr. Trouw refers to in Paragraph 35 of his declaration in support of Plaintiffs' preliminary injunction motion.

**Response to Request for Production No. 9:**  Sambreel will produce various Media Kits it has prepared over time that contain information about PageRage as well as information about the advertising that is not allowed.  Sambreel has also located and will produce a handful of internal training documents that discuss what advertising is inappropriate and not allowed.

**Facebook's Position on Request for Production No. 9:**  Facebook is willing to forego a motion to compel a more complete response at this time based on Sambreel's representation through its counsel that the documents Sambreel will produce describe its advertising policies and will show the types of advertisements Sambreel deems to be "inappropriate."  Facebook also does so based on the understanding that Sambreel will rely upon no other related documents on its advertising policies in support of its motion for a preliminary injunction.

**Request for Production of Documents No. 10:**  Documents sufficient to show any efforts by Plaintiffs to circumvent any technical or code-based barriers or other measures designed to block www.pagerage.com or the PageRage plug-in from facebook.com.

**Response to Request for Production No. 10:**  Sambreel will not produce any documents in response to this request.  The requested documents are not relevant to the preliminary injunction hearing, so Facebook cannot demonstrate a "need" for the production of such documents.  In fact, Sambreel is unaware how any such documents would be relevant to any issue in this case.  Moreover, Sambreel is not aware of any readily available documents that address this topic.  Accordingly, responding to this topic would require Sambreel to collect electronically stored information, search that information, and produce any responsive documents it finds.

**Facebook's Position on Request for Production No. 10:**  Facebook is willing to forego a motion to compel at this time based on Sambreel's representation through its counsel that (a) although Sambreel did take certain actions in response to Facebook's "gating" activity, any documents related to that activity would be in email correspondence that is not readily accessible.

**Request for Production of Documents No. 11:**  Documents sufficient to show PageRage's standard form marketing materials provided to advertisers, advertising networks, and advertising providers to sell advertising space on PageRage.

**Response to Request for Production No. 11:**  Sambreel will produce various Media Kits that describe PageRage and the opportunities for advertisers on that product.

**Facebook's Position on Request for Production No. 11:** Facebook will forego a motion to compel a more complete response at this time based upon production of the aforementioned documents and its understanding that Plaintiffs will not rely upon any other documents regarding its marketing of PageRage in support of their motion for a preliminary injunction.

**Request for Production of Documents No. 12:**  Documents sufficient to show Sambreel's use of Facebook user data (including User IDs), including its use of Facebook user data for its own functionality, whether and how it stores Facebook user data, and whether and how it shares Facebook user data with other Sambreel entities or third-parties and the identity of those parties.

**Response to Request for Production No. 12:**  Sambreel is not aware of any readily available or readily identifiable documents that are responsive to this request.  Based on our investigation to date, the January 9, 2012 letter from Sambreel's counsel to Facebook's counsel accurately describes the use and/or collection of Facebook user data including Facebook user identifications.  PageRage utilizes Facebook user identifications to identify the proper layouts to load.  Based on our review to date, no entities within Sambreel access or use Facebook user

identifications for any purpose other than for choosing the proper layouts to load.  And the user identifications are not shared with any third parties (*i.e.*, entities outside of the Sambreel group).

**Facebook's Position on Request for Production No. 12:**  Facebook is willing to forego a motion to compel at this time based on Sambreel's representation through its counsel that (a) it does not look at or collect any such information from a user's Facebook account other than described in its response to this Request for Production, (b) that it is not aware of any readily available or readily identifiable documents that are responsive to Facebook's request, and (c) that Plaintiffs will not rely upon any other information regarding this issue in support of their motion for a preliminary injunction.

**Request for Production of Documents No. 13:**  Documents sufficient to show (a) the types of advertisements displayed through PageRage, including the size, placement, content, and degree of targeting available to advertisers, (b) the extent to which Sambreel and/or its advertising intermediaries targeted or target advertisements to PageRage users (e.g., targeted ads to users pursuant to particular demographic or other identifying information), (c) method(s) used to conduct such targeting, and (d) the percentage of total PageRage advertising that each type of advertisement comprises.

**Response to Request for Production No. 13:**  Sambreel will produce various Media Kits, which show the various sizes of advertisements that have been available on PageRage.  As discussed, the "targeting" is done by the advertising intermediaries, not PageRage.  It is Sambreel's understanding that the advertising intermediaries use standard "cookie" based targeting for placing ads on PageRage.  There is ample publicly available information regarding

the amount of targeting that is possible based upon cookies, and Facebook is surely aware of that information.

**Facebook's Position on Request for Production No. 13:**  Facebook is willing to forego a motion to compel a more complete response at this time based on production of the aforementioned documents, and upon Sambreel's representation through its counsel that (a) PageRage does not engage in any targeting on its own, (b) the only targeting that is performed is done by Sambreel's advertising providers using only "cookie" based targeting.

**Request for Production of Documents No. 14:**  Documents sufficient to show (a) which Sambreel products and businesses generated revenues from RPD 8(d) above and (b) the time period during which such products were generating that revenue.

**Response to Request for Production No. 14:**  Sambreel will produce a timeline that sets forth the time at which its products were launched.  Sambreel will investigate whether it is possible to provide specific dates that monetization started for each product but cannot commit to producing such information at this time.

**Facebook's Position on Request for Production No. 14:**  Facebook is willing to forego a motion to compel a more complete response at this time based upon the production of the aforementioned timeline and investigation and upon Sambreel's representation through its counsel that (a) it will produce documentation showing when, if ever, any of Sambreel's products went offline and (b) it will produce documentation, to the extent it is available, showing when Sambreel monetized each of its products.  Facebook also does so based upon the understanding that Plaintiffs will not rely upon any other documents on this topic in support of their motion for preliminary injunction.

**Request for Production of Documents No. 15:** As to the products Arie Trouw contends Sambreel shelved in Paragraph 40 of his declaration, documents sufficient to show (a) the identity of each shelved products; (b) the total budgeted cost for development of each such product; (c) the total amount spent developing such product; and (d) projected revenue for such products.

**Response to Request for Production No. 15:** Sambreel will produce a list of products shelved as a result of the resource constraints brought on by Facebook's actions. To the extent there is readily available information about the money spent on these products prior to them being shelved, Sambreel will produce such information as well.

**Facebook's Position on Request for Production No. 15:** Facebook is willing to forego a motion to compel a more complete response at this time based on Sambreel's representation through its counsel that it will collect and produce information that is readily available concerning budgets or revenue projections for each shelved product. Facebook also does so based on the understanding that Plaintiffs will not rely upon any other information on this topic in support of their motion for a preliminary injunction.

**Request for Production of Documents No. 16:** Documents sufficient to show (a) the data underlying Mr. Sullivan's assertion that "[b]efore Facebook's interference, purchases made or brokered by these entities represented more than 80 percent of the advertising revenue for PageRage," (b) the revenue or percentage of revenue that PageRage derived from each of the entities Mr. Sullivan describes, and (c) all advertising partners from whom Sambreel has

generated revenue for PageRage from March 16, 2012 through the present and the percentage of revenue from each.

**Response to Request for Production No. 16:** Sambreel will produce data showing the revenues from the various advertising intermediaries over time.

**Request for Production of Documents No. 17:** The terms and agreement governing Sambreel's line of credit with Wells Fargo bank and all communications between Sambreel and Wells Fargo concerning default.

**Response to Request for Production No. 17:** Sambreel will produce copies of the line of credit documents and the default letters sent by Wells Fargo to Sambreel.

**Facebook's Position on Request for Production No. 17:** Facebook is willing to forego a motion to compel a more complete response at this time based on Sambreel's representation through its counsel that he would investigate whether there are additional lines of credit and should be able to produce copies of those additional lines of credit, if any, as well.