# EXHIBIT A

## Deeley, Elizabeth L.

| | |
|---|---|
| **From:** | Basile, James F. |
| **Sent:** | Thursday, April 12, 2012 6:00 PM |
| **To:** | Robert A. Klinck |
| **Cc:** | Deeley, Elizabeth L. |
| **Attachments:** | 2012-04-12 Requests Post-Meet and Confer.docx |

Bobby, per your request, and as we discussed on our meet and confer call today, attached is a list summarizing the narrowed requests we propose on behalf of Facebook. I have no pride of authorship in them, but they are meant to show specifically what we proposed and discussed with you on the call and the detailed documents we are requesting. They are, necessarily preliminary in some wording as we await your discussions with your client re better ways we might phrase to get at the info we discussed, and our subsequent call Monday morning at 9:00 as to whether we can agree to some or any. We remain available to talk Friday through Sunday as well if you think it would be useful. As we noted, because we do not know how Sambreel keeps documents, we are open to any reasonable suggestions or methods you may have to make producing or searching simpler. Look forward to speaking with you.

James F. Basile
Kirkland & Ellis LLP
415-439-1471
415-439-1371
555 California Street, 27th Floor
San Francisco, CA 94104

1

**Revised Requests for Production of Documents ("RPDs")**

1. Documents sufficient to show communications from PageRage users expressing dissatisfaction or confusion concerning the PageRage plug-in and Plaintiffs' responses in whatever format PageRage keeps consumer complaints.

2. Plaintiffs' contracts with the seven advertising partners identified in Paragraph 3 of Mr. Sullivan's declaration in support of Plaintiffs' preliminary injunction motion (Rubicon Project, AdMeld, OpenX, Advertising.com, LifeStreet, SayMedia, and Microsoft Media Network) and Neverblue concerning the placement of advertisements through PageRage.

3. All communications with the seven advertising partners identified in Paragraph 3 of Mr. Sullivan's declaration in support of Plaintiffs' preliminary injunction motion (Rubicon Project, AdMeld, OpenX, Advertising.com, LifeStreet, SayMedia, and Microsoft Media Network) and Neverblue concerning (a) discussions with Facebook about the ad injection methods, including serving ads through PageRage, and (b) why each of the seven advertising providers stopped doing business with PageRage.

4. Documents sufficient to show the number of PageRage users on a daily, weekly, or monthly basis since January 2009.

5. Documents sufficient to show each of the methods by which users obtain PageRage, e.g., visiting pagerage.com directly, downloading PageRage through bundled software (identifying the bundled software), affiliate advertising that directs users to pagerage.com, etc.) and the percentage of users that download PageRage through each of the identified methods. (We would accept a list or interrogatory type of response to this if that is more convenient than collecting documents.)

6. Documents sufficient to show user turnover rates on a daily, weekly, or monthly basis, which ever is most convenient, since January 2009, i.e., the rate at which PageRage users uninstalled or otherwise disabled the PageRage plug-in. (We would accept a list or interrogatory type of response to this if that is more convenient than collecting documents.)

7. Documents sufficient to show the spectrum of PageRage's functionality since January 2009, which could take the form of marketing materials or internal management material that describes PageRage's functionality, including any functionality that is not identifiable from public-facing material. [Open to discussing further per your discussion with your client and we are checking with ours as well].

8. Documents sufficient to show on a daily, weekly, or monthly basis, whichever is most convenient since January 2009, (a) the number of advertising impressions that PageRage and all other Sambreel products served, (b) the actual or average cost per 1000 impressions of the advertisements PageRage and all other Sambreel products served, (c) Sambreel's revenue from PageRage and (d) Sambreel's revenue for all of its other products. The documents should be sufficient to show the breakdown of each of the three categories for PageRage as compared to all other Sambreel products. (We would accept the spreadsheet you described as potentially responsive in our call today if it contains this information.)

Error! Unknown document property name.

9. The "advertising policies" that Mr. Trouw refers to in Paragraph 35 of his declaration in support of Plaintiffs' preliminary injunction motion.

10. Documents sufficient to show any efforts by Plaintiffs to circumvent any technical or code-based barriers or other measures designed to block www.pagerage.com or the PageRage plug-in from facebook.com.

11. Documents sufficient to show PageRage's standard form marketing materials provided to advertisers, advertising networks, and advertising providers to sell advertising space on PageRage.

12. Documents sufficient to show whether PageRage collected or collects any type of data from its users' Facebook accounts and, to the extent Plaintiffs contend that PageRage did not and does not collect any type of data from its users' Facebook accounts, any documents or policies supporting that contention.

13. Documents sufficient to show (a) the types of advertisements displayed through PageRage, including the size, placement, content, and degree of targeting available to advertisers, (b) the extent to which Sambreel and/or its advertising intermediaries targeted or target advertisements to PageRage users (e.g., targeted ads to users pursuant to particular demographic or other identifying information), (c) method(s) used to conduct such targeting, and (d) the percentage of total PageRage advertising that each type of advertisement comprises.

14. Documents sufficient to show (a) which Sambreel products and businesses generated revenues from RPD 8(d) above and (b) the time period during which such products were generating that revenue.

15. As to the products Arie Trouw contends Sambreel shelved in Paragraph 40 of his declaration, documents sufficient to show (a) the identity of each shelved products; (b) the total budgeted cost for development of each such product; (c) the total amount spent developing such product; and (d) projected revenue for such products.

16. Documents sufficient to show (a) the data underlying Mr. Sullivan's assertion that "[b]efore Facebook's interference, purchases made or brokered by these entities represented more than 80 percent of the advertising revenue for PageRage," (b) the revenue or percentage of revenue that PageRage derived from each of the entities Mr. Sullivan describes, and (c) all advertising partners from whom Sambreel has generated revenue for PageRage from March 16, 2012 through the present and the percentage of revenue from each.

17. The terms and agreement governing Sambreel's line of credit with Wells Fargo bank and all communications between Sambreel and Wells Fargo concerning default.

### Interrogatories

Defendant is willing to forego its interrogatory requests provided Plaintiffs agree that they will not seek to introduce any additional evidence on those topics beyond the declarations and documents submitted with the opening memorandum.

2

## Depositions

Defendants seek to depose Arie Trouw and Brad Miller about the statements made in each of their respective declarations in support of Plaintiffs' preliminary injunction motion. We can drop Mr. Sullivan and Mr. Levin if Plaintiffs produce the materials discussed in RPDs 2 and 3.