# EXHIBIT B

**Deeley, Elizabeth L.**

| | |
|---|---|
| From: | Robert A. Klinck [rklinck@kotchen.com] |
| Sent: | Tuesday, April 17, 2012 8:27 AM |
| To: | Basile, James F. |
| Cc: | Deeley, Elizabeth L. |
| Subject: | RE: |
| Attachments: | 2012 04 16 Sambreel's Responses to Facebook's Discovery Reqeusts.docx |

As you requested, attached is a written response to the categories of discovery Facebook is now seeking.

Bobby

Robert A. Klinck
Kotchen & Low LLP
2300 M Street NW, Ste. 800
Washington, D.C. 20037
rklinck@kotchen.com
(202) 604-8662

---

**From:** Basile, James F. [mailto:jbasile@kirkland.com]
**Sent:** Thursday, April 12, 2012 9:18 PM
**To:** Robert A. Klinck
**Cc:** Deeley, Elizabeth L.
**Subject:** RE:

Thanks, Bobby. As I said on today's call when you asked that we write and send to you the revised list coming out of our discussion, I tried my best to memorialize what we were trying to get at in today's call. If you want to talk about any of them, I'm available at any time.


James F. Basile
Kirkland & Ellis LLP
415-439-1471
415-439-1371
555 California Street, 27th Floor
San Francisco, CA 94104

---

**From:** Robert A. Klinck [mailto:rklinck@kotchen.com]
**Sent:** Thursday, April 12, 2012 6:12 PM
**To:** Basile, James F.
**Cc:** Deeley, Elizabeth L.
**Subject:** RE:

Jim,

We will be in touch, but I note that you have added some topics to this list from our call earlier today.

Bobby

Robert A. Klinck
Kotchen & Low LLP

1

2300 M Street NW, Ste. 800
Washington, D.C. 20037
rklinck@kotchen.com
(202) 604-8662

---

**From:** Basile, James F. [mailto:jbasile@kirkland.com]
**Sent:** Thursday, April 12, 2012 9:00 PM
**To:** Robert A. Klinck
**Cc:** Deeley, Elizabeth L.
**Subject:**

Bobby, per your request, and as we discussed on our meet and confer call today, attached is a list summarizing the narrowed requests we propose on behalf of Facebook. I have no pride of authorship in them, but they are meant to show specifically what we proposed and discussed with you on the call and the detailed documents we are requesting. They are, necessarily preliminary in some wording as we await your discussions with your client re better ways we might phrase to get at the info we discussed, and our subsequent call Monday morning at 9:00 as to whether we can agree to some or any. We remain available to talk Friday through Sunday as well if you think it would be useful. As we noted, because we do not know how Sambreel keeps documents, we are open to any reasonable suggestions or methods you may have to make producing or searching simpler. Look forward to speaking with you.

James F. Basile
Kirkland & Ellis LLP
415-439-1471
415-439-1371
555 California Street, 27th Floor
San Francisco, CA  94104

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

***************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
***************************************************

IRS Circular 230 Disclosure:
To ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, by any taxpayer for the purpose of (1) avoiding tax-related penalties under the U.S. Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matters addressed herein.

***************************************************
The information contained in this communication is

confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### Revised Requests for Production of Documents ("RPDs")

1. Documents sufficient to show communications from PageRage users expressing dissatisfaction or confusion concerning the PageRage plug-in and Plaintiffs' responses in whatever format PageRage keeps consumer complaints.

**Sambreel's Response:** Sambreel will produce all e-mails from the PageRage customer service e-mail address for Facebook's review.

2. Plaintiffs' contracts with the seven advertising partners identified in Paragraph 3 of Mr. Sullivan's declaration in support of Plaintiffs' preliminary injunction motion (Rubicon Project, AdMeld, OpenX, Advertising.com, LifeStreet, SayMedia, and Microsoft Media Network) and Neverblue concerning the placement of advertisements through PageRage.

**Sambreel's Response:** Sambreel will produce copies of contracts with these advertisers that relates to the placement of advertising through PageRage.

3. All communications with the seven advertising partners identified in Paragraph 3 of Mr. Sullivan's declaration in support of Plaintiffs' preliminary injunction motion (Rubicon Project, AdMeld, OpenX, Advertising.com, LifeStreet, SayMedia, and Microsoft Media Network) and Neverblue concerning (a) discussions with Facebook about the ad injection methods, including serving ads through PageRage, and (b) why each of the seven advertising providers stopped doing business with PageRage.

**Sambreel's Response:** Sambreel will search the files of Andrew Sullivan, who was in charge of the relationships with advertisers, for relevant correspondence. Sambreel will produce any relevant correspondence it locates. Sambreel believes that much of the interaction was done over the telephone.

4. Documents sufficient to show the number of PageRage users on a daily, weekly, or monthly basis since January 2009.

**Sambreel's Response:** Sambreel will produce an Excel Spreadsheet that contains the number of daily active users of PageRage from the time period during which the data is available.

5. Documents sufficient to show each of the methods by which users obtain PageRage, e.g., visiting pagerage.com directly, downloading PageRage through bundled software (identifying the bundled software), affiliate advertising that directs users to pagerage.com, etc.) and the percentage of users that download PageRage through each of the identified methods. (We would accept a list or interrogatory type of response to this if that is more convenient than collecting documents.)

**Sambreel's Response:** Sambreel will produce a spreadsheet that shows the number of daily installs via four avenues: (a) organic installs, (b) installs as a response to ad networks, (c) installs as a response to affiliate networks, and (d) installs that are part of a software bundle.

6. Documents sufficient to show user turnover rates on a daily, weekly, or monthly basis, which ever is most convenient, since January 2009, i.e., the rate at which PageRage users

Error! Unknown document property name.

uninstalled or otherwise disabled the PageRage plug-in. (We would accept a list or interrogatory type of response to this if that is more convenient than collecting documents.)

**Sambreel's Response:** Sambreel will produce data showing the total daily installs and the total daily uninstalls. As discussed during a meet and confer call on April 16, 2012, Sambreel receives a notification that the product is uninstalled only in limited circumstances. As such, the "uninstall" data does not include all users who disable PageRage and does not include any users who cease using PageRage as a result of changing computers or browsers.

7. Documents sufficient to show the spectrum of PageRage's functionality since January 2009, which could take the form of marketing materials or internal management material that describes PageRage's functionality, including any functionality that is not identifiable from public-facing material. [Open to discussing further per your discussion with your client and we are checking with ours as well].

**Sambreel's Response:** Sambreel will not produce any documents regarding this topic. The functionality of PageRage is publicly available on PageRage's website and is well known to Facebook. Indeed, Facebook's letters to Sambreel indicate that Facebook has downloaded PageRage and is aware of PageRage's functionality. As discussed during a meet and confer telephone call on April 16, 2012, Sambreel does not intend to rely upon any unknown functionality of PageRage to support its motion for preliminary injunction.

8. Documents sufficient to show on a daily, weekly, or monthly basis, whichever is most convenient since January 2009, (a) the number of advertising impressions that PageRage and all other Sambreel products served, (b) the actual or average cost per 1000 impressions of the advertisements PageRage and all other Sambreel products served, (c) Sambreel's revenue from PageRage and (d) Sambreel's revenue for all of its other products. The documents should be sufficient to show the breakdown of each of the three categories for PageRage as compared to all other Sambreel products. (We would accept the spreadsheet you described as potentially responsive in our call today if it contains this information.)

**Sambreel's Response:** Sambreel will produce an Excel Spreadsheet that provides the following information broken down between Sambreel as a whole and PageRage specifically on a daily basis: (a) active users, (b) advertising impressions served, (c) the average realized CPM, and (d) revenue. Data is available for the various categories starting on different dates, and the majority of the data categories are not available beginning in January 2009. Sambreel will produce data that is accessible to it at this time.

9. The "advertising policies" that Mr. Trouw refers to in Paragraph 35 of his declaration in support of Plaintiffs' preliminary injunction motion.

**Sambreel's Response:** Sambreel will produce various Media Kits it has prepared over time that contain information about PageRage as well as information about the advertising that is not allowed. Sambreel has also located and will produce a handful of internal training documents that discuss what advertising is inappropriate and not allowed.

2

10. Documents sufficient to show any efforts by Plaintiffs to circumvent any technical or code-based barriers or other measures designed to block www.pagerage.com or the PageRage plug-in from facebook.com.

**Sambreel's Response:** Sambreel will not produce any documents in response to this request. The requested documents are not relevant to the preliminary injunction hearing, so Facebook cannot demonstrate a "need" for the production of such documents. In fact, Sambreel is unaware how any such documents would be relevant to any issue in this case. Moreover, Sambreel is not aware of any readily available documents that address this topic. Accordingly, responding to this topic would require Sambreel to collect electronically stored information, search that information, and produce any responsive documents it finds.

11. Documents sufficient to show PageRage's standard form marketing materials provided to advertisers, advertising networks, and advertising providers to sell advertising space on PageRage.

**Sambreel's Response:** Sambreel will produce various Media Kits that describe PageRage and the opportunities for advertisers on that product.

12. Documents sufficient to show whether PageRage collected or collects any type of data from its users' Facebook accounts and, to the extent Plaintiffs contend that PageRage did not and does not collect any type of data from its users' Facebook accounts, any documents or policies supporting that contention.

**Sambreel's Response:** Sambreel is not aware of any readily available documents that would be responsive to this request. As discussed, Sambreel does not mine information from a user's Facebook account, but we are not aware of any policy document or other readily identifiable document that addresses this topic.

13. Documents sufficient to show (a) the types of advertisements displayed through PageRage, including the size, placement, content, and degree of targeting available to advertisers, (b) the extent to which Sambreel and/or its advertising intermediaries targeted or target advertisements to PageRage users (e.g., targeted ads to users pursuant to particular demographic or other identifying information), (c) method(s) used to conduct such targeting, and (d) the percentage of total PageRage advertising that each type of advertisement comprises.

**Sambreel's Response:** Sambreel will produce various Media Kits, which show the various sizes of advertisements that have been available on PageRage. As discussed, the "targeting" is done by the advertising intermediaries, not PageRage. It is Sambreel's understanding that the advertising intermediaries use standard "cookie" based targeting for placing ads on PageRage. There is ample publicly available information regarding the amount of targeting that is possible based upon cookies, and Facebook is surely aware of that information.

14. Documents sufficient to show (a) which Sambreel products and businesses generated revenues from RPD 8(d) above and (b) the time period during which such products were generating that revenue.

**Sambreel's Response:** Sambreel will produce a timeline that sets forth the time at which its products were launched. Sambreel will investigate whether it is possible to provide specific dates that monetization started for each product but cannot commit to producing such information at this time.

15. As to the products Arie Trouw contends Sambreel shelved in Paragraph 40 of his declaration, documents sufficient to show (a) the identity of each shelved products; (b) the total budgeted cost for development of each such product; (c) the total amount spent developing such product; and (d) projected revenue for such products.

**Sambreel's Response:** Sambreel will produce a list of products shelved as a result of the resource constraints brought on by Facebook's actions. To the extent there is readily available information about the money spent on these products prior to them being shelved, Sambreel will produce such information as well.

16. Documents sufficient to show (a) the data underlying Mr. Sullivan's assertion that "[b]efore Facebook's interference, purchases made or brokered by these entities represented more than 80 percent of the advertising revenue for PageRage," (b) the revenue or percentage of revenue that PageRage derived from each of the entities Mr. Sullivan describes, and (c) all advertising partners from whom Sambreel has generated revenue for PageRage from March 16, 2012 through the present and the percentage of revenue from each.

**Sambreel's Response:** Sambreel will produce data showing the revenues from the various advertising intermediaries over time.

17. The terms and agreement governing Sambreel's line of credit with Wells Fargo bank and all communications between Sambreel and Wells Fargo concerning default.

**Sambreel's Response:** Sambreel will produce copies of the line of credit documents and the default letters sent by Wells Fargo to Sambreel.

### Interrogatories

Defendant is willing to forego its interrogatory requests provided Plaintiffs agree that they will not seek to introduce any additional evidence on those topics beyond the declarations and documents submitted with the opening memorandum.

**Sambreel's Response:** Sambreel did not withhold information from its opening memorandum. Sambreel will rely upon the information in its opening memorandum and will rely upon whatever information is necessary to respond to Facebook's opposition. Moreover, Sambreel anticipates that, should the court order an evidentiary hearing, facts will emerge in preparation for the hearing. Sambreel will inform Facebook of any facts it intends to rely upon at the hearing in a timely manner.

### Depositions

Defendants seek to depose Arie Trouw and Brad Miller about the statements made in each of their respective declarations in support of Plaintiffs' preliminary injunction motion. We can drop Mr. Sullivan and Mr. Levin if Plaintiffs produce the materials discussed in RPDs 2 and 3.

**Sambreel's Response:** Sambreel objects to any depositions at this time.