1

2

3

4

5

6

7

8

FILED

2012 JUN 18  PM 2: 50

CLERK, US ...
SOUTHERN DISTRIC ...

BY_____DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| SAMBREEL HOLDINGS LLC.; YONTOO LLC; and THEME YOUR WORLD, | CASE NO. 12cv668-CAB (KSC) |
|---|---|
| Plaintiffs, | **ORDER DETERMINING JOINT MOTION FOR EXPEDITED DISCOVERY DISPUTE** |
| vs. | |
| FACEBOOK, INC., | [Doc. No. 32.] |
| Defendant. | |

The parties have filed a Joint Motion for Determination of Expedited Discovery Dispute. [Doc. No. 32.] For the following reasons, the Court determines defendant has not shown good cause exists for its expedited discovery requests and **DENIES** further expedited discovery.

## BACKGROUND

Defendant, Facebook, Inc., is a free social networking website that makes money by selling display advertising on its site. Compl. ¶ 1. Defendants, Sambreel Holdings, LLC; Yontoo LLC; and Theme Your World (collectively "Sambreel"), offer a product called "PageRage" which operates on the Yontoo platform and allows users to customize their Facebook accounts by adding designs that appear on their web browsers when they visit Facebook's website. Compl. ¶¶ 2 & 3. Sambreel asserts that PageRage offers advertisers a "low cost alternative" to purchasing advertising on Facebook. Compl. ¶¶ 2,3 & 4. As such, PageRage is Facebook's most direct competitor for advertising revenue. *Id.*

1    PageRage was launched in October 2008.  Compl. ¶ 3.  Between 2009 and October 2010,

2    PageRage had more than 1 million users per day and revenues exceeding $1 million per month.  *Id.* ¶

3    4.  By the second quarter of 2011 Sambreel served nearly 89 billion display advertising impressions,

4    had more than 4 million users per day, was third behind Facebook and Yahoo! in internet publishing,

5    and was likely to surpass Yahoo!  *Id.* ¶ 4.

6    Following PageRage's success, Sambreel alleges Facebook took the following illegal actions:

7    (1) enlisted and threatened application developers and advertising partners to boycott PageRage,

8    leading to a loss of 80 percent of PageRage's revenue; and (2) "gated" consumers who had

9    downloaded PageRage by requiring them to remove the entire Yontoo platform from their computers.

10   Compl. ¶ 6.  Facebook agreed to stop gating when Sambreel promised to cease advertising through

11   PageRage.  *Id.*  This eliminated Sambreel as an advertising competitor, ended any revenue production

12   to Sambreel from PageRage, and "left Facebook as the only supplier of display advertising impressions

13   on Facebook experiencing meaningful growth."  Compl. ¶¶ 6 & 7.

14   On March 19, 2012, Sambreel filed this action under federal antitrust laws, state unfair

15   competition laws, and state tortious interference laws. [Doc. No. 1.] On the same day, Sambreel filed

16   a Motion for Preliminary Injunction ("Motion for PI") before District Judge Bencivengo. [Doc. No.

17   3.] On March 28, 2012, Facebook filed an Ex Parte Motion for Expedited Discovery, seeking to serve

18   15 document requests, 11 interrogatories, and four deposition notices.  [Doc. Nos. 10 & 16.]

19   Following a Discovery Hearing on April 11, 2012, the Court denied Facebook's motion without

20   prejudice, and directed the parties to engage in further meet and confer discussions to narrow the scope

21   of the discovery requests. [Doc. No. 30.]

22   On April 13, 2012, Judge Bencivengo vacated the hearing date set for the Preliminary

23   Injunction Hearing, and ordered the parties to contact her chambers to reset the date following an order

24   from this Court on the parties' discovery dispute. [Doc. No. 31.] On April 20, 2012, the parties filed

25   the current Joint Motion for Determination of Expedited Discovery Dispute ("Joint Motion"). [Doc.

26   No. 32.]

27   ///

28   ///

**DISCUSSION**

I.    *Legal Standards*

A party may not seek discovery prior to the Rule 26(f) conference, unless that party obtains a stipulation or court order to conduct early or expedited discovery. Fed. R. Civ. P. 26(d)(1). For "good cause" shown, however, a court may order early discovery. *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Good cause may be found "where the need for the discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.*

The court in *Apple Inc. v. Samsung Electronics Co.*, Ltd., 2011 WL 1938154 (N.D.Cal.) set out five factors that are commonly considered when determining if good cause justifies expedited discovery: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the [responding party] to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Apple*, 2011 WL 1938154 at * 1, citing *American LegalNet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1067 (C.D.Cal. 2009). The parties in this case focus their dispute on factors (2) through (4).[1]

Expedited discovery in anticipation of a preliminary injunction hearing should be "narrowly tailored" to focus only on the issues that would help the District Court decide the merits of a preliminary injunction request. *Roche Diagnostics Corp. v. Medical Automation Systems, Inc.*, 2011 WL 130098 at *3 (S.D.Ind.) citing *Philadelphia Newspapers, Inc. v. Gannett Satellite Information Network, Inc.*, 1998 WL 404820 at *2 (E.D.Pa.). Injunctive relief requires proof that (1) movant is

---

[1] Factors (1) and (2) remain constant. Obviously, a Preliminary Injunction Motion is pending. Facebook states the discovery sought is only 46 days before it could propound discovery in the normal course of proceedings [joint motion at 3]. Facebook has not articulated the basis for this calculation which appears off the mark by potentially several months based on the discovery and pretrial scheduling time lines that would be applied in this Court, and taking into consideration the pending Motion to Dismiss [doc. no. 22]. *See* Fed. R. Civ. P. 4 (Answer yet to be filed), Rule 12 (Motion to Dismiss hearing set for June 22, 2012; ruling to be issued at a later date), Rules 16 & 26(f) (a scheduling order setting a discovery conference and initial disclosure dates will not be issued until an Early Neutral Evaluation is held which may be continued pending ruling on Motion to Dismiss); Civil Local Rule 16.1 (an Early Neutral Evaluation is held within 45 days of an Answer being filed, a Case Management Conference is held approximately 30 days after an Early Neutral Evaluation and generally sets fact discovery cutoff out by four months and expert discovery cutoff out by approximately seven months); Rule 26(f) (discovery conference concerning initial disclosures and discovery plan going forward is held 21 days before the Case Management Conference).

12cv668-CAB (KSC)

1   likely to succeed on the merits of the claim; (2) movant will suffer irreparable harm in the absence of

2   injunctive relief; (3) the balance of equities tips in movant's favor; and (4) injunctive relief is in the

3   public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

4   II.      *Application of Law to Expedited Discovery Requests*

5            A.      *Issues Before the District Court*

6            In its Motion for Preliminary Injunction, Sambreel contends that Facebook's actions in: (1)

7   organizing a "group boycott" of PageRage; (2) making "tying" agreements; and (3) monopolizing and

8   attempting to monopolize the display advertising market for social networking users, are illegal,

9   specifically based on The Sherman Act, 15 U.S.C. §§ 1 & 2, and California's Unfair Competition Law,

10  CAL.BUS. & PROF CODE, §§ 17200 & 17203. Motion for PI at 11-18. By "group boycott" Sambreel

11  is referring to its allegation that "Facebook and its Application Developers joined together and

12  threatened to withhold business from third parties (advertising providers) unless they would help

13  Facebook injure a directly competing rival (Sambreel)." Motion for PI at 12. By "tying" Sambreel

14  is referring to its allegation that "Facebook agreed to offer its services only to users who would agree

15  *not* to use the services of Sambreel–an entity that competes with Facebook in the sale of advertising."

16  *Id.* at 14 (emphasis added). Pertinent to its arguments, Sambreel states Facebook has in excess of 85

17  percent of the market share among social networking sites. *Id.* at 15. Additionally, Sambreel claims

18  Facebook violated California's Penal Code by accessing, without permission, user computers to scan

19  for use of PageRage. *Id.* at 20.

20           Sambreel argues that in the absence of injunctive relief, it will be forced to deactivate

21  PageRage, resulting in irreparable harm as it will be driven out of business. Sambreel states it has

22  already lost significant income, its line of bank credit, and has had to lay off 124 employees. Motion

23  for PI at 21. Sambreel also states it will continue to lose goodwill, prospective customers, and will

24  be unable to grow unless it receives injunctive relief. *Id.* at 22.

25           Sambreel further claims that a preliminary injunction will not cause harm to Facebook and

26  denies allegations by Facebook that "PageRage: (1) causes consumer confusion; (2) displaces

27  Facebook's content; (3) interferes with Facebook's commercial relationships; (4) creates security risks,

28  (5) mines data from Facebook; and (6) automatically sends messages or mimics Facebook

1 | functionality, and allows advertisers to run ads that do not meet Facebook's Advertising Guidelines."

2 | Motion for PI at 23.

3 |       Finally, Sambreel asserts the public interest will be served by an injunction as consumers will

4 | have product choice in the market.  Sambreel seeks an injunction "that: (a) prevents Facebook from

5 | enforcing or threatening to enforce the portions of its advertising and development policies that require

6 | Facebook's partners to boycott competing companies and (b) prevents Facebook from requiring

7 | Sambreel users to uninstall any Sambreel product before accessing www.facebook.com."  Motion for

8 | PI at 25.

9 |       B.    *Disputed Discovery*

10 |       Appendix A to the Joint Motion outlines the documents that are to be produced by Sambreel

11 | to Facebook.  The parties were unable to reach agreement on the following discovery despite meet and

12 | confer efforts.

13 |       (1)    Interrogatory No. 1: Identify all facts, documents and witnesses that Sambreel seeks to rely upon in support of its Motion for a Preliminary Injunction, unless the use would

14 |             be solely for impeachment.

15 |       Facebook's counsel, James Basile, states that Facebook needs a response to Interrogatory No.

16 | 1 because Sambreel refused to agree that it would not  introduce any additional evidence in support

17 | of its Motion for Preliminary Injunction, besides the declarations and documents already submitted

18 | with the opening memorandum.  Basile Decl. ¶ 5, Exh. B.  In response, Sambreel has represented that

19 | it "will rely on whatever information is necessary to respond to Facebook's opposition."  Joint Motion

20 | at 2.  Facebook claims that this response implies that Sambreel intends to unfairly "sandbag" Facebook

21 | by introducing additional facts, documents and evidence in support of the preliminary injunction, after

22 | Facebook files its Opposition.  *Id.*  Thus, Facebook requests that any later introduction of facts,

23 | documents or witness testimony in support of the Motion for Preliminary Injunction that Sambreel

24 | seeks to produce to refute arguments raised in Facebook's Opposition be excluded or "at minimum,

25 | [that] Facebook should be given an additional opportunity to seek further discovery concerning the

26 | topics addressed by those documents."  Joint Motion at 7.

27 |       Sambreel argues it has no intention of introducing any new evidence or arguments in its Reply

28 | and merely reserves the right to submit supplemental information if necessary to address any

1 unanticipated arguments raised in Facebook's Opposition to the Motion for Preliminary Injunction.

2      The Court considers Facebook's request as contained in this Interrogatory to be overbroad and

3 burdensome as it could implicate potentially hundreds of documents that relate in any way to the issues

4 surrounding the Motion for Preliminary Injunction.  Further, this issue is not yet ripe, as the content

5 of any Reply by Sambreel, and whether it will contain new facts, is contingent on the scope of

6 Facebook's Opposition, which has not yet been filed.  Facebook has failed to adequately identify a

7 specific need for the information demanded as necessary to oppose the Motion for Preliminary

8 Injunction.[2]  Already Sambreel has agreed to produce 14 out of the 17 categories of documents that

9 Facebook initially sought.   Joint Motion at 4; *see* Appendix A to Joint Motion ("Appdx A").

10 Expedited discovery requires a narrow focus, not a shotgun method of investigation as sought by

11 Facebook. *Roche Diagnostics Corp.*, 2011 WL 130098 at *3.

12      Moreover, should Sambreel seek to introduce new arguments or evidence in response to

13 Facebook's Opposition, the District Court will have the discretion to grant the filing of a Surreply,

14 strike improper new arguments not originally raised in the Motion for Preliminary Injunction, or

15 require submission of supplementary discovery or declarations, if necessary. *See Iconix Inc. v.*

16 *Tokuda*, 457 F.Supp.2d 969, 976 (N.D.Cal., 2006) (supplemental declarations were granted to afford

17 opportunity to respond to new evidence and arguments in Reply brief).  Sambreel should be permitted

18 to respond to Facebook's Opposition brief as permitted under controlling law and rules of procedure,

19 and Facebook's efforts to limit the content of a future Reply filing is improper.

20      Accordingly, the Court does not find good cause to order Sambreel to respond to Facebook's

21 Interrogatory No. 1.

22     (2)  <u>Request for Production of Documents Identified in Sambreel's response to Interrogatory No. 1</u>

23     This Request is a corollary to the one above.  Accordingly, because the Court denies discovery

24 pertaining to Interrogatory No. 1, the Court also declines to order Sambreel to respond to Facebook's

25 request for production of documents related thereto.

26     (3)  <u>Deposition of Arie Trouw–Founder and Chief Executive Officer of Sambreel</u>

27

28    [2] While the discovery sought may be appropriate during discovery in the normal course, Facebook has not demonstrated a need for this information at this early stage.

1    Facebook seeks five on-the-record hours of deposition testimony from Arie Trouw about, *inter*

2    *alia*, statements made in his Declaration, which Facebook contends are vague and non-specific. Joint

3    Motion at 9. Facebook identifies five areas to which it will narrow its deposition questions. The Court

4    will address each one in turn.

5                    (a)      Advertisements on PageRage

6                    Facebook states that the pricing of like product to like product is key to the likelihood

7    of success on the merits of an antitrust claim. Joint Motion at 9-10. Pursuant to this, Facebook "seeks

8    to question Mr. Trouw on the types of advertisements PageRage provides, including the size,

9    placement, content, and targeting of those advertisements" and to "probe the pricing of

10   advertisements" to determine whether PageRage is truly a "low cost alternative" as stated by Mr.

11   Trouw. *Id.* at 10. Facebook acknowledges that Sambreel has provided them with "media kits" that

12   contain information about advertising on PageRage but contends that the kits will not describe Mr.

13   Trouw's "thinking" in comparing PageRage's advertising with that of Facebook's. *Id.*

14                   In response to Facebook's request for expedited discovery, Sambreel has already agreed

15   to produce: (1) documents that show the placement and size of advertisements available on PageRage;

16   (2) Media Kits containing information about advertising on PageRage; and (3) data showing the

17   average price per thousand impressions at which advertisements were ultimately sold. Joint Motion

18   at 16; Appdx. at 7. Moreover, some of this information has been publicly available to Facebook on

19   its own website. Facebook first wrote a letter objecting to the types of advertising by PageRage in

20   October 2010, complaining PageRage was displacing and covering Facebook content and

21   advertisements, among other things. Trouw Decl. at ¶ 17. The parties have been engaged in

22   negotiations since 2010 through sophisticated counsel. *See Apple*, 2011 WL 1938154, * 2 (ongoing

23   negotiations of sophisticated parties and counsel relevant in considering expedited discovery

24   disputes).[3]

25                   There is sufficient information at Facebook's disposal, without deposing Mr. Trouw, to form

26

27        [3] In *Apple*, consideration of this factor, among others, weighed in favor of expedited discovery
     because Apple sought information about Samsung products that had not yet been released. *Apple*,
28   2011 WL 1938154, * 2.   By contrast, in this case, the way PageRage functioned and affected
     Facebook's operations was mostly determinable from looking at the website.

1    an assessment about advertisements on PageRage and whether PageRage is a low cost competitor.

2              (b)    PageRage's Lost Advertisers

3              In his declaration, Mr. Trouw asserts that a number of its advertising partners told

4    Sambreel in the Summer and Fall of 2011 that Facebook had contacted them to demand they cease

5    doing business with Sambreel. Trouw Decl. at ¶ 22. Facebook argues Mr. Trouw has failed to identify

6    these partners, what was said in the conversations, what responsive action Sambreel took, and who

7    stopped doing business with Sambreel in response to these threats. This information pertains to the

8    group boycott claim contained in Sambreel's Motion for Preliminary Injunction claim.

9          Sambreel submitted a Declaration in support of its request for injunctive relief from Andrew

10   Sullivan, Chief Executive Officer of a subsidiary of Sambreel's, who is responsible for interaction with

11   entities that purchase advertising from Sambreel. Therein, he identifies seven advertising partners who

12   ceased doing business with Sambreel between August and November 2011. [Doc. No. 3-6.]; Sullivan

13   Decl. ¶ 3.  He also identifies three advertising partners who would not agree to disengage with

14   Sambreel and were thereafter removed by Facebook from the list of approved advertisers for

15   developers on the Facebook Platform. *Id.* ¶ 4.

16         In response to discovery demands propounded by Facebook, Sambreel either has produced or

17   will produce written communications with the advertisers it has identified. Joint Motion at 17; Appdx.

18   A at 2-3. Additionally, Facebook itself will certainly have a list of advertisers it called  and related

19   information.

20         Facebook possesses sufficient information, without deposing Mr. Trouw, to defend against

21   Sambreel's assertion of group boycott, and for the District Court to determine this issue.

22             (c)    Gating Allegations

23         Facebook also seeks to depose Mr. Trouw regarding Sambreel's allegation that Facebook

24   violated California's Penal Code by accessing, without permission, user computers to scan for use of

25   PageRage. For example, Facebook wants to know if Sambreel conducted any tests or hired an outside

26   company to reach this conclusion. Joint Motion at 11.

27         In his declaration, Mr. Trouw states:

28              Based upon Sambreel's investigation, it appears that Facebook's
                computers were scanning the DOM of the user's web browsers to

                                        - 8 -                          12cv668-CAB (KSC)

> determine whether the browsers were showing content delivered by PageRage. The DOM is a representation of the operation of a user's computer that is not generally accessible to entities other than the user of a computer.

[Doc. No. 3-2.]; Trouw Decl. ¶ 25.

This Court can decipher no reason why Facebook needs to question Mr. Trouw to determine the source of his knowledge, or how he reached the conclusion he did, in order for Facebook to oppose the Motion for Preliminary Injunction. This issue, and Facebook's assertion that Sambreel endeavored to circumvent Facebook's protection, may prove to be relevant in the case in chief, but does not justify expedited discovery at this early stage of the case.

In sum, Facebook possesses enough information from Sambreel and its own operations to defend against Sambreel's allegation that Facebook violated the California Penal Code.

(d)    Popularity of PageRage

Facebook seeks to depose Mr. Trouw regarding his statements about the popularity of PageRage, its benefits to users, the alleged "wide user base" of millions, his knowledge of complaints and any remedies addressing those complaints. Joint Motion at 12-13. Facebook asserts that the wide user base may be due to the difficulties in uninstalling the program. *Id.* Facebook claims Mr. Trouw's claim of active users may be overstated. *Id.*

Facebook asserts that deposition questions on these issues are relevant to both its "business justification defense" to the antitrust claims, and to the public interest considerations that would be used to form a defense to Sambreel's arguments for a Preliminary Injunction.

Sambreel argues that Facebook can correctly assess PageRage's popularity by reviewing the following information Sambreel has agreed to produce: (1) data showing the number of installations; (2) data showing the number of uninstalls; (3) data showing what percentage of PageRage installs were the result of various channels for user acquisition; (4) data showing the number of daily active users of PageRage; and (5) all emails that were sent to the PageRage customer service email address. Joint Motion at 19-20; Appdx. A at 4-5.

While information going to a business defense and public interest is directly relevant to the issue of whether Sambreel is likely to succeed on the merits of its claim, the information Sambreel has agreed to provide, together with Facebook's own evidence of user complaints, should be sufficient to

1  Facebook's formation of a defense to Sambreel's request for injunctive relief. Indeed, if Facebook is

2  correct in arguing that Sambreel's activities were so hard to identify and uninstall, one would expect

3  that Facebook would have been on the front line in receiving consumer complaints and therefore

4  would be in possession of such complaints.

5      Again, Facebook has sufficient information to oppose Sambreel's demand for injunctive relief

6  without deposing Mr. Trouw.

7      (e)    Irreparable Harm

8      Facebook argues it should be allowed to "test Mr. Trouw's unsubstantiated irreparable harm

9  claims to determine whether Sambreel's alleged injury is remote, speculative, and whether money

10  damages would provide adequate compensation." *See Dotster, Inc. v Internet Corp. for Assigned*

11  *Names & Numbers*, 296 F.Supp.2d 1159, 1162 (C.D. Cal. 2003) (ireparable harm is an injury that is

12  not remote or speculative, but actual and imminent).

13      Mr. Trouw's Declaration, between and including paragraphs 25 through 44, clearly sets out all

14  the losses that would be incurred by Sambreel if its most popular and revenue producing product was

15  gated or removed from the market, including loss of goodwill, loss of a business credit line, and lay-off

16  of employees. Sambreel has agreed to produce data of active users that will be affected by gating,

17  financial data showing revenue from PageRage, copies of its credit line with Wells Fargo, default

18  notices, and information regarding the products it has been forced to shelve. Appdx. A at 3-5, 7,13.

19  This information is sufficient to allow Facebook to prepare a defense to the Motion for Preliminary

20  Injunction.

21      (4)    Deposition of Brad Miller–Chief Revenue Officer of Sambreel

22      Facebook also seeks five on-the-record hours of deposition testimony from Chief Revenue

23  Officer, Brad Miller, about the statements made in his declaration concerning Sambreel's "consistent

24  growth" prior to Facebook's alleged boycott and gating, and irreparable harm. Joint Motion at 22-23.

25      Facebook contends Mr. Miller's conclusions are largely unsubstantiated and conclusory and

26  do not provide the bases for evaluating Sambreel's consistent growth and irreparable harm allegations.

27  Joint Motion at 23 & 25. Facebook wants information about how Sambreel tracks the number of

28  active PageRage users or advertising impressions on PageRage, an explanation of what portion of the

1  57 billion advertisements in November 2011 were attributable to PageRage alone as opposed to other

2  Sambreel products, any limitations on Sambreel's tracking abilities, an explanation of why Sambreel's

3  advertising rates fluctuated, which new products Sambreel's consistent growth was able to launch, and

4  the profitability of these products.  Facebook complains that Mr. Miller tends to blur the distinction

5  between the Sambreel and PageRage names and fails to identify how many users uninstalled or

6  stopped using PageRage as opposed to other Sambreel products.

7       In his declaration, Mr. Miller stated the following:

8           Sambreel has data showing . . . [i]n April 2010, there was an average
            of approximately 780,000 daily active users on PageRage. By August
9           2011, the average number of daily active users on Page Rage had
            increased to almost 4.5 million. Miller Decl. ¶ 3
10
                               ***
11
12          In October 2010, Sambreel served 15 billion ad impressions, and nearly
            99 percent of those ads were served by PageRage. By November 2011,
            the number of advertising impressions . . . had risen to 57 billion, with
13          almost 45 billion of those impressions coming from PageRage. *Id.* ¶ 4.

14                             ***

15          Advertising rates are generally seasonal, with higher rates toward the
            end of each quarter. And rates are generally highest in December, as
16          companies spend a considerable amount of money on advertising
            during the holiday season. *Id.* ¶ 5.
17

18      Sambreel has agreed to produce data substantiating the number of advertising impressions and

19  daily active users served on a daily basis by PageRage specifically, and all of Sambreels products

20  generally, revenues generated on a daily basis by PageRage alone versus Sambreel in general, specific

21  PageRage and general Sambreel daily advertising rates, daily installs and uninstalls of Page Rage, and

22  timelines of new product launches and when any were shelved due to loss in revenue.  Joint Motion

23  at 27; Appdx A at 4-5, 7, 11-13.

24      This Court expects that the information Sambreel has already committed to producing will

25  relate to the representations made by Mr. Miller in his declaration.  If so, there is little weight to

26  Facebook's contention that Mr. Miller's conclusions are largely unsubstantiated and conclusory.  If

27  the documents and information produced by Sambreel do not support Mr. Miller's representations,

28  Facebook will no doubt highlight this in opposing the Motion for Preliminary Injunction.  While there

1   is little information from Mr. Miller and Sambreel about the company's tracking methods and the

2   limitations of Sambreel's data tracking capabilities,[4] this will not prevent Facebook from forming its

3   defense against the Motion for Preliminary Injunction.

4           Facebook has not articulated a legitimate basis for taking Mr. Miller's deposition at this stage

5   of the proceedings.

6           C.      *Conclusion*

7           Having considered Facebook's stated purpose and need for responses to Interrogatory No. 1,

8   Document Request No. 1, and the depositions of Mr. Trouw and Mr. Miller, the Court concludes

9   sufficient discovery has already been propounded by Facebook, to which Sambreel's responses have

10  been and will soon be forthcoming, to facilitate Facebook's defense and the ability of the District

11  Judge to rule on Sambreel's Motion for Preliminary Injunction. *See Apple*, 2011 WL 1938154 at *

12  1 (must consider purpose for request and burden on responding party); *Semitool*, 208 F.R.D. at 276

13  (need must outweigh prejudice to responding party).  Further, Facebook's requests are not tailored

14  narrowly enough to focus only on the issues necessary for addressing the Motion for Preliminary

15  Injunction.  *See Apple*, 2011 WL 1938154 at * 1 (breadth of discovery request a factor to be

16  considered); *Roche Diagnostics*, 2011 WL 130098 at * 3 (discovery in anticipation of a preliminary

17  injunction hearing should be "narrowly tailored" to focus only on the issues that would help the

18  District Court decide the merits of a preliminary injunction).  To the extent that representations in

19  support of the Motion for Preliminary Injunction are unsupported or speculative, Facebook may

20  highlight these inadequacies in its Opposition.  Accordingly, the Court finds Facebook has failed to

21  establish "good cause" for the expedited service of Interrogatory No. 1, Request for Production of

22  Documents No. 1, and for the expedited depositions of Arie Trouw and Brad Miller.

23  ///

24  ///

25  ///

26  ///

27  ///

28

---

[4] Sambreel has admitted that data regarding uninstalls is not complete.  Joint Motion at 27.

1

## CONCLUSION

2      Pursuant to the above discussion, the Court **HEREBY DENIES** Facebook's request for further

3  expedited discovery.

4      **IT IS SO ORDERED**.

5

6  Dated: _6/15/12_

7

8                                          Karen S. Crawford
                                          United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28