1  Gregory P. Olson (Ca. Bar No. 177942)
   LAW OFFICE OF GREGORY P. OLSON
2  501 West Broadway, Suite 1370
   San Diego, CA 92101
3  Telephone: (619) 564-3650
   Facsimile: (619) 233-1969
4  greg@olsonesq.com

5  Daniel Kotchen (*Pro Hac Vice*)
   Daniel Low (*Pro Hac Vice*)
6  Robert Klinck (*Pro Hac Vice*)
   KOTCHEN & LOW LLP
7  2300 M Street NW, Suite 800
   Washington, DC 20037
8  Telephone (202) 416-1848
   Facsimile: (202) 280-1128
9  dkotchen@kotchen.com
   dlow@kotchen.com
10 rklinck@kotchen.com

11 *Attorneys for Plaintiffs*

12

13                IN THE UNITED STATES DISTRICT COURT

14                SOUTHERN DISTRICT OF CALIFORNIA

15

16 SAMBREEL HOLDINGS LLC; YONTOO LLC;          Case No. 3:12-CV-00668-CAB-KSC
   and THEME YOUR WORLD LLC,
17                                             **MEMORANDUM OF POINTS AND**
                  Plaintiffs,                  **AUTHORITIES IN SUPPORT OF**
18                                             **PLAINTIFFS' *EX PARTE* APPLICATION**
                  vs.                          **FOR LEAVE TO FILE SUPPLEMENTAL**
19                                             **AUTHORITY IN SUPPORT OF MOTION**
   FACEBOOK, INC.,                             **FOR PRELIMINARY INJUNCTION AND IN**
20                                             **OPPOSITION TO FACEBOOK, INC.'S**
                  Defendant.                   **MOTION TO DIMISS.**
21
                                               Judge:        Hon. Cathy Ann Bencivengo
22

23

24

25

26

27

28

## I.   INTRODUCTION

Sambreel Holdings LLC, Yontoo LLC, and Theme Your World LLC (collectively "Sambreel") hereby request leave to file a Supplemental Authority in Support of Motion for Preliminary Injunction and in Opposition to Facebook, Inc.'s Motion to Dismiss ("Supplemental Authority").  The proposed Supplemental Authority cites to case law that directly addresses issues raised by the Court at the oral argument on the pending motions that occurred on August 9, 2012.  Specifically, the Supplemental Authority demonstrates that other courts have adopted the position set forth by Sambreel at the oral argument that a website owner *has no property rights in the visual representation of a website that occurs on a user's computer screen*.  The proposed Supplemental Authority is attached as Exhibit A.

## II.   BACKGROUND

On March 19, 2012, Sambreel filed its complaint and motion for preliminary injunction. Sambreel alleges that Facebook has coerced users and advertising partners to agree not to use PageRage or do business with Sambreel with respect to PageRage.  The Court currently has Sambreel's Motion for Preliminary Injunction and Facebook's Motion to Dismiss before it.

The parties' briefing on these motions focused on cases addressing issues under the Sherman Act and California's Unfair Competition Law.  The parties did not address intellectual property issues in any depth.  Facebook, for example, never cited a case that holds that a website operator owns (or has a cognizable property interest in) the visual representation of a website shown on a user's computer. Facebook has never asserted that it has *any* copyright interest at stake in this case, and has made only passing reference to a possible trademark issue.  Specifically, Facebook made passing reference to the Lanham Act in a footnote in its Reply in Support of Motion to Dismiss, but it expressly stated that the issue was "not necessary to resolving" the Motion.  *See* Doc. No. 35 at 2 n.2.  Facebook also made a passing reference to the Lanham Act in its Opposition to Sambreel's Motion for Preliminary Injunction. *See* Doc. No. 41 at 30-31.  Facebook did not assert that the Lanham Act issue demonstrated that Sambreel did not have a likelihood of success on the merits; instead, Facebook argued that the Lanham Act issue was relevant to the "balance of equities."  *See id.*  Moreover, Facebook did not provide any

1  analysis of the issue, choosing instead to make a one sentence assertion followed by a citation to two

2  cases. *See id.*[1]

3      In its Reply in Support of its Motion for Preliminary Injunction, Sambreel responded to the

4  Lanham Act issue raised by Facebook by pointing the Court to a decision by the Second Circuit

5  concluding that software products like those referred to by Facebook do not violate the Lanham Act. *See*

6  Doc. No. 45 at 19 n.11 (citing *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005)).

7      At oral argument held on August 9, 2012, the Court made clear that it views the intellectual

8  property rights at issue as potentially dispositive to this case.   Specifically, the Court inquired why

9  Facebook should not be allowed to control what appears "on" its website. *See* Transcript of Hearing at

10  9:7-24 (Aug. 9, 2012) ("Hearing Tr.").   The Court explained that it was "struggling" trying to analogize

11  this case to examples that did not involve electronic delivery:   "The problem, I've been struggling with

12  trying to find analogies for this because whenever you get out of the electronic delivering stuff and start

13  talking about hard brick-and-mortar stuff, it starts to fall apart." *Id.* at 11:14-17.   Sambreel's counsel

14  explained that PageRage does not operate "on" or make any changes to Facebook's website; instead, all

15  changes are made on the individual user's computer as a result of the installation of a browser add-on.

16  *See id.* at 10:6-15.[2]   Sambreel's counsel also analogized to non-internet examples that demonstrate that

17  an end user is allowed to make changes to a product once it is delivered. *See id.* at 11:1-13.   The Court

18  expressed the view that the visual display of a website on an individual's computer is the "virtual

19  property" of the website operator. *See id.* at 59:20-23.

20      Subsequent to the hearing, Sambreel's counsel conducted research on the matters raised by the

21

22

-----

[1]  In asserting that PageRage violates the Lanham Act, Facebook had cited to only a single case that
23  involved a product that that added content when a user visits websites. *See* Doc. No. 41 at 31 (citing
*Washington Post Co. v. Gator Corp.*, No. civ-02-00909-A (E.D. Va. July 16, 2002)).   That case involved
24  a product that was indistinguishable from the product at issue in three of the cases cited in the
Supplemental Authority.   Moreover, one of the cases that Sambreel cites in its Supplemental Authority is
25  a subsequent case from the same court that concludes – after thorough analysis – that these "pop-up"
advertising products do not violate the Lanham Act. *See U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F.
26  Supp. 2d 723 (E.D. Va. 2003).

27  [2]  Facebook concedes that the changes made by PageRage occur at the browser level on an individual
user's computer. *See, e.g.,* Hung Decl, (Doc. No. 41-11) ¶ 17 (showing that Sambreel's product
28  communicates with the web browser, not Facebook's servers).

1    Court at the hearing, and found a number of cases that address the Court's concern.   Specifically,

2    Sambreel found cases that make clear that software products that show additional content to users on

3    their own computers do not infringe the intellectual property of the underlying websites.   These cases

4    make clear that these products do not operate "on" the website and do not modify the website.   *See Wells*

5    *Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003); *1-800 Contacts, Inc. v.*

6    *WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005); *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d

7    723 (E.D. Va. 2003).   The cases also make clear that website operators *have no property interest in the*

8    *visual display on a user's computer*. *See Wells Fargo*, 293 F. Supp. 2d at 771.   Sambreel's counsel also

9    located a Ninth Circuit precedent that concluded that a product that changes the visual representation of

10   copyright-protected electronic media does not infringe the copyright and that the producers have no

11   interest in how their products are ultimately enjoyed.   *See Lewis Galoob Toys, Inc. v. Nintendo of*

12   *America, Inc.*, 964 F.2d 965 (9th Cir. 1992).

13        On August 16, 2012, Sambreel's counsel advised Facebook's counsel of these cases and of its

14   intent to seek leave to file a Supplemental Authority to bring these cases to the Court's attention.

15   Sambreel's counsel made clear that it would have no objection to Facebook filing a response to the

16   Supplemental Authority.   Facebook responded by stating that it does not believe that it is appropriate to

17   bring these cases to the Court's attention in a Supplemental Authority for three primary reasons:  (a) none

18   of the cases are "new," (b) none of the cases "involve any of the antitrust issues that the court addressed

19   at the hearing," and (c) the Court has already received considerable briefing "on these issues." *See* Ex.

20   B. After a further telephone conversation, the parties were unable to resolve the matter.

21   **III.    ARGUMENT**

22        This Court should grant Sambreel leave to file its Supplemental Authority.   Courts have

23   discretion to grant parties leave to file supplemental authority. *See, e.g., Block v. Solis*, No. C08–

24   1850JLR, 2010 WL 2079688, at *8-9 (W.D. Wash. May 20, 2010) (granting motion to supplement the

25   record and noting the court's discretion).   Because there is a strong public policy in deciding cases based

26   on the complete record, a court should not "turn a blind eye" to relevant supplemental information. *Id.* at

27   *9.   It is appropriate to allow parties to file supplemental authority to address issues that are discussed at

28   oral arguments. *See, e.g., United States v. Simpson*, No. 10–CR–0836 (RRM) (JO), 2011 WL 7428808,

at *3 (E.D.N.Y. Sept. 8, 2011) ("The parties sought, and I granted, leave to file supplemental filings on a range of issues discussed at oral argument."). Under this case law, Sambreel should be granted leave to file its Supplemental Authority.

First, Sambreel seeks to file a Supplemental Authority that directly addresses issues raised by the Court at oral argument. The Court expressed the view that Facebook's actions are justified because it owns the "virtual property" on which PageRage operates. And the Court expressed the view that it was "struggling" to find an analogy for the facts of this case. Under these circumstances, the Court should allow the filing of the Supplemental Authority because it addresses these issues directly and provides the Court with references to decisions by other courts that have analyzed similar issues. As set forth in the Supplemental Authority, courts have held that products that Facebook has characterized as similar to PageRage: (1) do not operate "on" the underlying webpage, (2) do not alter the underlying webpage, (3) do not raise any copyright issues, and (4) do not raise any Lanham Act issues. *See Wells Fargo & Co. v. WhenU.com, Inc.*, 293 F. Supp. 2d 734 (E.D. Mich. 2003); *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400 (2d Cir. 2005); *U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723 (E.D. Va. 2003). These cases also make clear that a website operator has *no property right* in the display that appears on a user's computer screen. *See Wells Fargo*, 293 F. Supp. 2d at 771. The Ninth Circuit has similarly held that a holder of a copyright in electronic media does not have any property rights in the manner that the material is ultimately displayed on a user's display. *See Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 964 F.2d 965 (9th Cir. 1992). The Supplemental Authority, therefore, directly addresses the concerns expressed by the Court at the oral argument held August 9, 2012. Just as the *Block* Court concluded it would be inappropriate to "turn a blind eye" to supplemental factual information, this Court's analysis of this case will be aided by considering the decisions of other courts on the property rights at issue.

Second, Sambreel's request to file its Supplemental Authority is appropriate because it does not seek to raise a new argument. Instead, Sambreel seeks to bring this Court's attention to relevant legal precedent that supports the arguments it has already made. It is generally accepted that a party is free to raise new *legal authority* to support an argument it has already raised. *See, e.g., United States v. Rapone*, 131 F.3d 188, 196-97 (D.C. Cir. 1997) (noting that while it is inappropriate for a party to raise a *new*

1 *argument* on appeal a court may consider – and should not ignore – newly cited legal authority to support

2 an argument that was already made); *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 773 n.20

3 (7th Cir. 2010) (same).  In response to the Court's questioning at the hearing, Sambreel's counsel clearly

4 and repeatedly argued that PageRage did not implicate any of Facebook's property rights because the

5 changes were made at the user's browser.  Sambreel's Supplemental Authority simply provides the Court

6 with citations to prior cases that have reached precisely this conclusion.

7       Facebook's objections to the filing of the Supplemental Authority are without merit.  Facebook's

8 assertion that the Supplemental authority is inappropriate because the cases are not "new" should be

9 rejected.  This is not a basis for rejecting the Supplemental Authority.  By way of analogy, Rule 28(j) of

10 the Federal Rules of Appellate Procedure allows for the filing of a Notice of Supplemental Authority

11 regardless of whether the cited authority is "new."  *See Cunico v. Pueblo School Dist. No. 60*, 917 F.2d

12 431, 434 n.1 (10th Cir. 1990) (allowing party to file Rule 28(j) authority regardless of why the

13 supplemental authority "come[s] to counsel's attention").  Here, the Court's questioning at the hearing

14 made clear to Sambreel's counsel that the Court viewed the "virtual property" issue as critical to deciding

15 the pending motions.  Sambreel's counsel conducted research and located cases that squarely address this

16 precise issue.[3]  The fact that these cases are not "new" should not preclude Sambreel from presenting

17 them to the Court for its consideration.

18       Facebook's assertion that the cases cited in the Supplemental Authority do not "involve any of the

19 antitrust issues that the court addressed at the hearing" is frivolous.  The Court clearly expressed its view

20 that Sambreel could not succeed on its claims because PageRage operated "on" Facebook's virtual

21 property.  *See* Hearing Tr. at 9:7-24, 59:20-23.  Moreover, Facebook's own counsel framed its defense to

22 the antitrust matters as hinging on the fact that PageRage operated "on" Facebook's website.  *See id.* at

23 62:11-12 (arguing that the *Power Ventures* case stands for the proposition that Facebook has the right to

24 control what appears "on [its] own website").  While Sambreel does not concede that the intellectual

25

---

26 [3] To be sure, Sambreel previously cited one of these cases in its Reply in Support of Motion for
Preliminary Injunction.  Sambreel's counsel had previously focused only on that case's implication for a
27 direct Lanham Act allegation.  Sambreel's counsel had not focused on this case's relevance to a broader
28 question of whether products like PageRage operate "on" a website's "virtual property."

1  property issues are dispositive, the Court and Facebook's counsel have clearly expressed the view that

2  these issues are crucial to deciding this case.  As such, it is appropriate to allow Sambreel to file its

3  Supplemental Authority to bring the Court's attention to the prior cases that address this precise issue.[4]

4          Facebook's assertion that the Court has already been presented with considerable amount of

5  information "on these issues" is simply false.  While the parties provided extensive briefing on antitrust

6  issues and addressed the relevance of cases that involved a company controlling what information may

7  be posted to its internet servers, the parties have not provided considerable legal authority on the question

8  of who owns the visual display shown on a computer screen.  Similarly, while the parties have presented

9  factual information about how PageRage operates -- showing unquestionably that the changes occur at

10 the browser level -- they have not presented legal authority that addresses whether this constitutes

11 operating "on" the underlying website.  Sambreel believes that the Court should consider the decisions

12 by other Courts that have considered these issues.  In light of the fact that the parties have filed nearly

13 200 pages of briefing on the antitrust issues (and Facebook has filed between 500 and 1,000 pages of

14 declarations and exhibits), it is appropriate to allow Sambreel to file a *five page* Supplemental Authority

15 to address an issue that the Court deems crucial to the decision.

16         Finally, the Court should grant Sambreel leave to file the Supplemental Authority because doing

17 so will not unfairly prejudice Facebook.  Sambreel does not object to Facebook being given the

18 opportunity to file a response to the Supplemental Authority.  As such, Facebook will be given the

19 opportunity to address the issues raised by the cases cited by Sambreel.[5]  The only apparent harm to

20 Facebook is that the Court will be presented with cases that undermine Facebook's position.  This is not

21 an unfair harm, as the Court should be presented with the relevant authority to inform its decision.

22

23

---

24 [4] If Facebook now intends to take the position that the ownership of the "virtual property" is irrelevant as
   a matter of antitrust law, it can certainly make that clear in its written response to the Supplemental
25 Authority.  Similarly, if Facebook's position is that these cases are irrelevant for other reasons, it can
   present those arguments in response.  Sambreel believes that the best course is to present the Court with
26 the most relevant authorities on the issues raised at the hearing.

27 [5] Facebook would similarly be given the opportunity to cite to any cases that it views as contradicting
   Sambreel's position.  To date, however, Facebook has not cited any cases that hold that a website has a
28 property right in the visual display on its users' computers.

MEMORANDUM IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION TO FILE SUPPLEMTAL AUTHORITY

**IV.     CONCLUSION**

      For the reasons set forth herein, the Court should grant Sambreel leave to file its Supplemental Authority in Support of Motion for Preliminary Injunction and in Opposition to Facebook, Inc.'s Motion to Dismiss.

Dated: August 20, 2012                                                                     LAW OFFICE OF GREGORY P. OLSON

                                                               By: _s/  Gregory P. Olson_
                                                                  Attorney for Plaintiffs
                                                                   E-mail: greg@olsonesq.com

                                              and

                                              KOTCHEN & LOW LLP
                                                  DANIEL KOTCHEN
                                              DANIEL LOW
                                              ROBERT KLINCK

CASE NO. 12-CV-00668-CAB-KSC
MEMORANDUM IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION TO FILE SUPPLEMTAL AUTHORITY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of this MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND IN OPPOSITION TO FACEBOOK, INC.'S MOTION TO DISMISS via the CM/ECF system on August 20, 2012.

Dated: August 20, 2012

By: s/ Gregory P. Olson
Attorney for Plaintiffs
E-mail: greg@olsonesq.com